## No. 7769.

### JUSTILIEN OUBRE VS. THE TOWN OF DONALDSONVILLE.

Municipal bonds issued in pursuance of legislative authority and negotiable in form, are not subject to equities as to consideration or otherwise, in the hands of a *bona fide* holder for value before maturity.

Act No. 69 of the Legislature of 1861, authorizing the Town of Donaldsonville to issue the bonds sued upon in this case, and the law of 1853, now section 2448 of the Revised Statutes, prohibiting police juries and incorporated towns and cities to contract debts without providing the means of paying them, are not inconsistent, and the later enactment did not repeal the previous one. Therefore, the Town of Donaldsonville is only bound on said bonds to the extent of the provision made for the payment of the same, by the levy of an annual tax of $1000 on the real estate of said town, during ten years.

The objection raised by Defendant, that such a tax is not uniform and, therefore, is unconstitutional, is not tenable. The point fully examined.

APPEAL from the Fourth Judicial District Court, parish of Ascension. *Duffel*, J.

*R. N. Sims* for Plaintiff and Appellee.

*Nicholls & Pugh* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. Plaintiff, as the holder of fifty bonds of the town of Donaldsonville, for $100 each, negotiable in form and acquired by him for valuable consideration and before maturity, brings this suit against the said defendant for the amount thereof with the unpaid interest. He avers that the said bonds were issued by the Mayor and Selectmen of the town, in virtue of legislative power conferred upon them to that effect by Act of the General Assembly, No. 69 of 1861 ; that in the ordinances under which the bonds were issued, provision was made for the payment of annual interest and also for the levying and collection of an annual tax of one thousand dollars upon all the real estate of said corporation, for ten years, to form a sinking fund to pay and redeem said bonds.

He prays for judgment against the town for the whole amount claimed, and for further judgment ordering the tax collector of the town to collect forthwith the said special tax of $1000 for the several years for

which it had not been collected and to apply the same to pay and satisfy the judgment herein.

Defendant opposes numerous defenses, of which, in this case, we find it necessary to consider only the following, viz:

1st. That the bonds sued on are without consideration, because given in settlement or renewal of prior bonds or evidences of debt which were illegal and absolutely null and void; because, at the time of issuance of the same, no provision was made in the ordinance creating the debt for the payment of the principal or interest thereof, as required by law.

This defense cannot avail, in the present case, where the plaintiff is not the party to whom the bonds were originally issued, but is alleged and proved to be a *bonâ fide* holder, for value, acquiring the bonds, negotiable in form, before maturity.

Against such holder of such bonds, the only defense permissible is the want of power to issue them, and they are not subject to equities as to consideration or otherwise.

See numerous cases cited in Dillon on Munic. Bonds §§ 5 and 7.

Dillon on Munic. Corps. §§ 405, 415, 416.

Daniell on Nego. Inst. § 1500. State ex rel. Moore vs. City, 32 A. 46.

By Act No. 69 of 1861, the General Assembly authorized the Mayor and Selectmen of Donaldsonville "to issue bonds of said town, for such sums, not exceeding $25,000, as in their judgment may be required for the interest of said town."

It is not disputed that these bonds were issued in pursuance of this legislative authority. Purchasers of such bonds, after issuance and before maturity, were not bound to inquire beyond the existence of the power and its exercise by the corporate officials designated. They have no concern with the motives or considerations which guided these officials in the exercise of the discretion vested in them by the legislative power.

2d. They urge that the bonds sued on are void, because, in the ordinance creating the debt, the means of paying the principal and interest thereof were not fully provided. From 1853 to the present time the following provision, now embodied in Section 2448 Revised Statutes, has been the law of this State : " The police juries of the several parishes, and the constituted authorities of incorporated towns and cities, shall not hereafter have power to contract any debt or pecuniary liability, without fully providing, in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

By the very terms of this provision, it is a limitation upon the *power* of police juries and municipal authorities, and is, therefore, operative as well against third persons holding negotiable municipal bonds as against the original holders thereof. Frequent adjudications of this

Court have placed it beyond controversy that debts contracted by municipal authorities in violation of this prohibitory law are stricken with nullity and are incapable of judicial enforcement.

29 A. 677 ; 23 A. 235 ; 24 A. 458 ; 26 A. 60 ; 28 A. 614 ; 30 A. 40, 41, 462} ; 31 A. 180 ; 28 A. 243 ; 23 A. 251, 19 ; 10 A.

Dillon on Mun. Corp. 372, 381.

We are not disposed to construe the provision so strictly as to say that where some provision is made, the contract will not be valid to the extent of such provision ; but it will be valid only to such extent.

Neither would we be so technical as to hold that if contemporaneous provision be made even in a different ordinance from that creating the debt it would not be a sufficient compliance with the statute. In such case we should consider the two ordinances as substantially one.

After a close scrutiny of all the ordinances and resolutions of the corporate authorities connected with the issuance of the bonds, of which those herein sued on are a part, we find no provision whatever made for the payment of either principal or interest on these bonds, except the following, viz : " that an annual tax of one thousand dollars be levied on all the real estate of the corporation of the town of Donaldsonville, and that the same be set aside to form a sinking fund to pay the said consolidated debt."

The liability of the town must be clearly restricted within the limits of this provision, unless either these bonds can be removed from the operation of section 2448 Revised Statutes, or unless it can be shown that they are entitled to the benefit of some other provision validly made for their payment.

It is suggested that inasmuch as the Act of 1861, authorizing the issuance of these bonds imposed no condition requiring provision to be made for their payment, they were excepted from such condition. This position is utterly untenable. The Act of 1861 was a special law and did not repeal the general law of 1853 and 1855, now Sec. 2448 R. S. There is no express repeal, and there is no inconsistency from which a repeal can be implied. R. C. C. Art. 23. Municipal corporations and police juries have no right to issue notes or bonds at all, without special legislative authority. 23 A. 191, 235. The Act of 1861 was intended solely to supply this authority. The power, however, when granted, fell under the control of the general law of the State as to the requisites to its valid exercise. Suppose a special law had granted the town the power of executing mortgage notes upon certain immovable property belonging to it, would that have dispensed the town from observing the provisions of the general law establishing requisites to the validity of mortgages ? Clearly not.

See Destrehan vs. Police Jury, 31 A. 180.

It is next contended that, besides the provision made at the time of issuing these bonds, there existed provisions for the prior existing obligations taken up by the bonds, which continue in force for the payment of the latter.

To this the answer is three-fold :

First. The record does not enable us to trace any connexion between the bonds here sued on and any other pre-existing obligations of the town, except the corporation note or bond dated April 3d, 1861, issued in pursuance of the resolution or ordinance of January 1st, 1861, which was itself given in renewal of a prior note issued under an ordinance or resolution of March 29th, 1860. In neither of these ordinances was any provision whatever made for their payment.

Second. If we should undertake, on the simple assurances of counsel and without legal evidence, to trace the consideration of these obligations still farther back, we should still find no provisions made at any time except appropriations or pledges of certain revenues of particular years long since exhausted or otherwise disposed of, and abandoned by creditors in the acceptance of new obligations.

Third. We regard the transaction between the town and the creditors under which the present bonds were issued, as a complete novation of the former debt, and a consequent surrender of former securities if any there were. The old notes were surrendered, cancelled and marked "paid by bond." These bonds stand as a new debt with no provision for its payment except that made at the time of its creation.

14 A. 54 ; 6 N. S. 377 ; 2. N. S. 144 ; 2 La. 111 ; 16 La. 140 ; 4 A. 543; 2 A. 179 ; 26 A. 345.

3rd. It is contended that the provision made for the redemption of these bonds can have no effect, because it is a tax on real estate only, and, therefore, unconstitutional.

The law now embodied in section 2448, Revised Statutes, was not intended as a trap to catch unwary creditors. Its motive was simply to restrain municipal extravagance by requiring corporate officials, at the moment of contracting debt, to contemplate the necessity of providing for its payment, and, by requiring such actual provision, to keep the taxpayers advised of the burdens to which they were being subjected by their official agents, so that they might hold them responsible therefor.

Its effect is much less radical than that of the constitutional provision touching the city of New Orleans, discussed in our recent decision in the case of the Taxpayers' Association vs. Mayor. The latter disabled the city from contracting a debt at all, and we held that claims against her were not, therefore, debts, but were mere claims against the revenues appropriated for their payment.

The same result does not follow from section 2448. Debts contracted, when provided for, become, to the extent of such provision, not only claims against the provided fund, but actual and valid debts of the corporation.

In the instant case, the corporation actually made provision to the extent of $1000 *per annum* for ten years, to be raised by taxation.

There can be no doubt that, at the time, the corporate authorities and the creditors and all concerned, honestly believed, and had reason to believe, that the tax directed to be levied on real estate alone, was a valid and constitutional tax. Such had been the interpretation of prior constitutions. 2 An. 182; 3 An. 673; 10 An. 398, 402, 735; 8 An. 341; 9 An. 562.

The Constitution of 1864 had recently gone into effect, and its somewhat different provisions on the subject of taxation had not received any different judicial interpretation on this particular question.

The original charter of defendant, passed in 1846, conferred the power of taxing real estate separately; and even the new charter, granted in 1870, conferred the same power.

Were we now to decide that the corporate authorities and the creditors were mistaken in their honest belief that the particular provision made was constitutional, we would not, on that account, feel justified in holding that the debt of the town, contracted in good faith, and, to the extent of the provision, in intended conformity with law, was stricken with nullity. Justice would require that an honest error, shared by both parties, should not operate to the advantage of one and the destruction of the other. We should hold that the corporation was bound to supply the equivalent of the provision made, and to substitute a constitutional tax for the one supposed to be, but discovered not to be, constitutional.  .

We are not, however, prepared to say that the provision made is necessarily unconstitutional, under any construction. It only required that "an annual tax of one thousand dollars be levied on all the real estate of the corporation." This does not exclude the idea that this one thousand dollars might have been a part of an equal and uniform tax levied on all taxable property, real estate as well as other. Nothing prevented the corporation from appropriating to a particular purpose the taxes derived from a special class of taxable property.

This view renders unnecessary, and we purposely avoid, any expression of opinion on the vexed question, whether or not the article of the Constitution applies to municipal corporations. This question, after various contradictory decisions, is now pending before the Supreme Court of the United States in the important case of the State *ex rel.*

Southern Bank vs. Mayor, and we prefer to do nothing to anticipate or influence the decision thereof.

The record shows that the annual tax of $1000 for the first four years was duly collected and appropriated, and that, of the provision made, there remain uncollected only $6000, being the annual tax for the years 1871, 1872, 1873, 1874, 1875 and 1876.

It also appears from the record that this provision was not made for the bonds held by petitioner alone, but was a common provision for all the bonds issued under the ordinance, of which the plaintiff's were only a portion. Of course he is entitled to his ratable share of the provision.

In the absence of other interested parties and of complete evidence on the point, we cannot settle the amount of this ratable share so as to give a money judgment therefor. We shall so frame our decree as to settle the principles on which the amount is to be ascertained, and will leave the lower court to make such orders in execution thereof by *concursus* or otherwise, as may be necessary for final settlement and distribution.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered by the lower court, it is now ordered, adjudged and decreed that the following be recognized and declared to be the amount remaining unpaid upon the bonds held by plaintiff and sued on in this case, to-wit: the sum of $7000, with five per cent. per annum interest on $400, from April 1st, 1872; with like interest on $400 from April 1st, 1873; with like interest on $400 from April 1st, 1874; with like interest on $400 from April 1st, 1875; with like interest on $400 from April 1st, 1876; and with eight per cent. *per annum* interest on $5000 from April 1st, 1876; that he be recognized and declared to be a creditor of the defendant for his ratable share of the six thousand dollars remaining unpaid out of the provision made for the redemption of the principal and interest of the bonds issued under the resolution of the Mayor and Board of Selectmen of the defendant, dated March 20th, 1866, said ratable share to be the proportion of said six thousand dollars which the amount remaining unpaid on his bonds as above settled shall bear to the amount remaining unpaid on all bonds issued in pursuance of said resolution; and that the defendant be condemned to pay the amount of said ratable share.

It is further ordered that the tax collector proceed forthwith to collect the special tax of one thousand dollars levied by ordinance of March 20th, 1866, on the assessment rolls of 1871, 1872, 1873, 1874, 1875 and 1876 and to turn the proceeds over to the treasurer or proper au-

thorities of the town of Donaldsonville, to be applied to the satisfaction of the debt due plaintiff according to the principles stated in this decree, and subject to the orders of the court *à quâ* in execution thereof.

And that the costs of this appeal be paid by plaintiff and appellee, and those of the lower court by defendant.