### AETNA LIFE INS. CO. v. CITY OF BURRTON.

(Circuit Court, D. Kansas, Third Division. September 15, 1896.)

#### No. 407.

1. MUNICIPAL BONDS—VALIDITY—AID TO RAILROADS — CITIES AND TOWNSHIPS.

The Kansas statute of 1871 (chapter 60), providing for the organization and government of cities of the third class, declares, in section 4, that all cities subject to the act "shall be and remain a part of the corporate limits of the municipal townships in which the same is situated for all township purposes of electing justices of the peace, constables, for the purpose of building bridges, and subscribing stock in aid of constructing railroads." Held, that under this section, when a township came to act upon the subject of subscribing stock in aid of railroads, the people and territory of a city of the third class situated therein were to be considered as included in the township, but that said section, when considered with other parts of the statute, did not deprive the city itself of power to subscribe independently, under the authority given to all incorporated cities by Act 1876, c. 107, § 1.

2. SAME.

The Kansas act of 1887 (chapter 183) amended section 1 of the act of 1876, which authorized incorporated cities to subscribe in aid of railroads, providing that the total county, township, and municipal subscriptions did not exceed $4,000 per mile of road constructed in the county, by reducing the amount to $2,000 per mile, with a proviso that the amendment should not affect accrued rights or any aid voted or election pending prior thereto. Held, that where a subscription had been voted, and the railroad company was engaged in constructing the road pursuant to the terms thereof prior to the amending act, the limitation to $2,000 per mile did not apply.

3. SAME—OVERISSUES.

Where township and city subscriptions in aid of a railroad exceeded the total amount allowed by law per mile of road, but the city bonds were first issued and delivered, held, that their validity was not affected by the overissue subsequently made by the issuance and delivery of the township bonds.

This was an action at law by the Aetna Life Insurance Company against the city of Burrton, in the county of Harvey, Kan., to recover upon interest coupons attached to railroad aid bonds.

Rossington, Smith & Dallas, for plaintiff.
J. W. Rose and Peters & Nicholson, for defendant.

FOSTER, District Judge. This action is brought to recover upon interest coupons attached to bonds issued by the defendant corporation to aid in the construction of the Kansas Midland Railway, by virtue and under authority of chapter 107 of the act of the legislature of 1876, entitled "An act to enable counties, townships and cities to aid in the construction of railroads, and to repeal section 8 of chapter 39 of the Laws of 1874." The total issue of bonds was $14,000, bearing date December 1, 1887, were to run 30 years, and bore interest at the rate of 6 per cent. per annum, payable semiannually. The defendant corporation is, and was at the time of the issuance of the bonds, a city of the third class. The defendant makes defense to this action on several grounds, and, first, that the city of Burrton, under the provisions of section 4 of chapter 60 of the act of 1871, is a part of the municipal township of Burrton for the purpose of subscribing stock in aid of constructing railroads, and cannot issue bonds as a city; that the city of Burrton never had a population of 1,000 inhabitants, nor an assessed value of real and personal property of $100,000, and hence has never become a separate township for any purpose under the provisions of paragraph 925 of the General Statutes of 1889. As a further defense, the defendant avers that the total assessed value of all property, real and personal, in Burrton township, including the city of Burrton, for the year 1886, was $226,961.42, and that the law only authorized the issue by townships of bonds in aid of railroads to the amount of $15,000, and 5 per cent. additional of the assessed value of the township. It further avers that the municipal township of Burrton, prior to the issuing of the bonds in controversy, had issued $26,000 of its bonds in aid of the said railway company, that being the full amount which it was authorized by law to issue. As a further defense, it is averred that the total mileage of the main line of the Kansas Midland Railway in Harvey county was 13.18 miles, and, including side tracks and switches 15.1 miles; that, prior to the issuance of these bonds, Lake township, in said county, had issued $20,000 of its bonds to said railway company, in addition to the $26,000 issued by the township of Burrton; and that the act of the legislature of 1887 (chapter 183), which was in force at the time the bonds were issued, limited the total issue of bonds for county, township, and city in aid of any railroad to $2,000 for each and every mile constructed in the county, and therefore the said bonds in controversy were in violation of said act, an overissue, illegal, and void. In reply to the last defense, the plaintiff avers that the limit of $2,000 per mile does not apply, because these bonds were voted in 1886, and the law at that time permitted the issue of $4,000 per mile, and the law of 1887 contained provisos saving all rights acquired under the former act.

The first question to be considered is the intent and meaning of section 4 of chapter 60 of the act of 1871, providing for the organization and government of cities of the third class. It reads as follows:

"Sec. 4. Municipal corporations regulated and governed by this act shall be and remain a part of the corporate limits of the municipal townships in

which the same is situated for all township purposes of electing justices of the peace, constables, for the purpose of building bridges, and subscribing stock in aid of constructing railroads. All elections for justices of the peace and constables, and for issuing township bonds for building bridges and railroads, shall be held at such place as shall be prescribed for holding the township elections."

It will be observed that the city is not made a part of the municipal township for all purposes, but for all township purposes of electing justices of the peace, constables, building bridges, and subscribing stock in aid of railroads. The effect of this section was to make the city of Burrton a part of the municipal township of Burrton for issuing township bonds in aid of railroads. So, when the municipal township of Burrton came to act on that subject, as a township, the people and territory of the city of Burrton were to be considered as included in the township. The act of 1870 (chapter 90) had provided for townships issuing bonds in aid of railroads. An election should be called by the county commissioners on the petition of 50 qualified voters, etc.; and section 5 required three-fifths of the electors voting to favor the subscription in order to carry the proposition. Section 4, before cited, does not, when considered with other provisions of the law, either expressly or by implication deprive the city of the right to issue its bonds as a city in aid of railroads. Section 63 of the same act provides as follows:

"Sec. 63. The council shall take all needful steps to protect the interests of the city, present or prospective, in any railroad leading from or toward the same; but they shall not take or subscribe any stock in any railroad, unless at least two-thirds of the electors of such city voting at a legal election vote in favor thereof."

Without holding this section sufficient authority for the city to have issued its bonds, at least it indicates the legislative intent. It required a different proportion of electors of the city (two-thirds) to vote for the subscription than was required by section 5 of the act of 1870 for township subscriptions.

Section 1 of the act of 1876 (chapter 107), under which these bonds were issued, provides that:

"* * * Whenever two-fifths of the resident tax payers of any incorporated city shall petition the mayor and council of such city to submit to the qualified voters of such * * * city a proposition to subscribe for the capital stock of, or to loan the credit of such * * * city to any railroad company constructing or proposing to construct a railroad through or into such * * * city, * * * the mayor and council for such city shall cause an election to be held to determine whether such subscription or loan shall be made. * * * And in no case shall the total amount of county, township and city aid to any railroad company exceed four thousand dollars per mile for each mile of railroad constructed in said county."

This section confers the authority to aid the construction of railroads on any incorporated city. It is general, and later than the act of 1871. Section 5 requires two-thirds of the qualified electors voting, to favor the subscription, in order to carry it.

Passing to the question of the overissue: It appears from the agreed statement of facts that the election for voting on the subscription and bonds was duly held on the 12th day of August, 1886; that 107 electors voted for the subscription, and 8 against it; that on August 13th the vote was duly canvassed by the mayor and council, and

declared carried; and that they made an order that "the clerk of said city of Burrton duly subscribe to the capital stock of said railway company in the sum of $14,000, and authorized the mayor and city clerk, after the railway company had complied with the terms and conditions of said subscription, and upon its demand, to issue the said bonds of the said city of Burrton, and deliver the same to the said company." It further appears from the agreed facts that said bonds were to be made in the sum of $500 each, payable in 30 years from the date of issue, bearing 6 per cent. interest, payable semiannually, both principal and interest, at the fiscal agency of the state of Kansas, in the city of New York; such bonds to be delivered to the said Kansas Midland Railway Company after it shall have constructed a railroad of standard gauge into said city on or before December 31, 1887, with a suitable depot for freight and passengers, and a telegraph station therein, within three-quarters of a mile of the then depot of the Atchison, Topeka & Santa Fé Railroad Company, in the city of Burrton, Harvey county, Kan. It is further admitted that the said Kansas Midland Railway Company was to have its cars running upon said railroad track from Wichita, Kan., to the city of Burrton, on or before December 31, 1887. It is further admitted that the railroad company complied with all conditions aforesaid, and had its cars running to the city of Burrton, from the city of Wichita, on or before the said time mentioned in said petition, and that the said railway company made proof of said compliance with the terms and conditions hereinbefore referred to, and asked and received from the city 28 bonds, for which a receipt was issued by said Kansas Midland Railway Company, which receipt is in words and figures as follows, to wit:

"Burrton, Kansas, December 22, 1887.

"Received of the mayor and council of the city of Burrton, Kansas, twenty-eight bonds of said city, aggregating $14,000, made to the Kansas Midland Railway Company, and heretofore voted in aid of the construction of said railroad.        The Kansas Midland Railway Company,
                                        "By O. H. Bentley, Its Secretary and Attorney.
                "The St. Louis & San Francisco Railroad Company,
                        "By Colin R. Wise, Its Resident Engineer and Agent."

It is further agreed that the stock was subscribed and the bonds delivered to the railway company on the 22d day of December, 1887, and the said bonds were duly registered according to law in the office of the auditor of state on the 31st day of December, 1887, as shown by the certificate of the auditor of state on each of said bonds. It is further agreed that on the 30th day of December, 1887, Burrton township executed and delivered bonds to said railway company in the sum of $26,000, and that Lake township, in said county, executed and delivered bonds to said company in the sum of $20,000; that all of said bonds bear date December 1, 1887, and were duly registered in the office of the auditor of state on the 31st day of December, 1887.

The following preamble and resolution is a part of the records of the city of Burrton:

"The following preamble and resolution was passed at a meeting of the city council of the city of Burrton, held in the city of Burrton, December 22, 1887: Whereas, the city of Burrton has heretofore voted bonds in the sum of $14,000 to aid in the construction of the Kansas Midland Railway Company;

and whereas, said railway company has completed its line of railway through Harvey county, Kansas, with a depot and telegraph station at the city of Burrton, Kansas, in accordance with the terms of said proposition; and whereas, the mayor and councilmen of said city have passed over the completed line of said railway in said Harvey county; and whereas, said company has fully complied with all the terms and conditions of its proposition to said city, and now has trains running upon its line of railway: Therefore, be it resolved, that the mayor of the city of Burrton. and the city clerk of said city, are hereby authorized to sign, execute, and deliver to the Kansas Midland Railway Company, its successors and assigns, the bonds of said city in the sum of $14,000, as heretofore voted to the Kansas Midland Railway Company."

It is further agreed that, before the maturity of the interest coupons or bonds, the plaintiff became the bona fide purchaser thereof for value.

The act of 1887 (chapter 183) amended section 1 of the act of 1876, and reduced the amount of bonds to be issued from $4,000 to $2,000 for each and every mile of road built in the county; but said act contained the following provisions:

"Provided, nothing herein contained shall be construed to impair any rights accrued under the acts hereby repealed. Provided, that nothing in this act shall affect any aid voted, or election pending at or prior to the time when this act goes into effect."

It seems to me that these provisos clearly saved to the Kansas Midland Railway Company all the rights it had acquired under the act of 1876. It is true the contract between the city and the railway company was not completed, but it was in process of execution. The company had until December 31, 1887, to perform it. It had acquired vested rights under the act of 1876 by the vote of the electors of the defendant corporation, and those rights were expressly saved by the provisos above quoted.

But it is contended that, even at $4,000 per mile, there was an over-issue, unless the side tracks are included. The total of all the bonds, city and township, was $60,000. This demanded at least 15 miles of railroad to be constructed in the county. Of the main line, there was 13.18, and, with the side tracks, 151 miles in the county. How far this discrepancy, if a discrepancy there is, would affect a bona fide holder of these bonds, I am not prepared to say; but one thing is clear under this feature of the law, and that it this: The first issue of bonds, all of which were within the limit of the law, would not be affected by a subsequent overissue of other bonds. These bonds were delivered to the railroad company on the 22d day of December, 1887, eight days before the Burrton and Lake township bonds were issued, as appears from the agreed facts, and from the certificates from the office of the auditor of state. That they all bear date and were registered on the same day is not so material as the date of their actual issue and delivery. Judgment must go for the plaintiff.