(51 South. 91.)

No. 17,707.

BOARD OF COM'RS OF IOWA DRAINAGE DIST. NO. 1. v. WILKINS CO.

(June 15, 1909.   On Rehearing, Jan. 3, 1910.)

*(Syllabus by the Court.)*

1. BONDS OF DRAINAGE DISTRICT—CONTRACTS.

Where it appears that the proceeds of a tax, authorized by vote of the property holders in a drainage district, will be insufficient to pay, with accruing interest, the whole of an issue of bonds authorized by the same vote, and, otherwise, to accomplish the purposes declared in the proposition submitted to such voters, a party contracting upon the faith of the proceedings, and who is to be paid with some of the bonds so authorized, is not bound to go on with his contract.

On Rehearing.

2. DRAINS (§ 18*)—DISTRICTS—BONDS—DRAINAGE DISTRICT—TAX ELECTION—BONDS OVER ISSUE, ETC.

An excessive issue of bonds voted by the taxpayers of a drainage district are valid to the extent of the aggregate amount of the taxes to be raised by the levy of a tax for a certain number of years. In such a case the bonds first negotiated and delivered, up to the aggregate amount of the taxes to be raised, are entitled to payment by preference out of the proceeds of the tax.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 18.*]

3. DRAINS (§ 13*)—DRAINAGE DISTRICTS—DIVISION OF PARISH.

The division of a parish into one or more drainage districts is a matter within the discretion of the police jury.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 13.*]

4. PARISHES—POLICE JURY—ORDINANCES.

An ordinance of the police jury may be transcribed on the minutes at any time, nunc pro tunc.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 68; Dec. Dig. § 53.*]

5. DRAINS (§ 17*) — DRAINAGE DISTRICTS — COMMISSIONERS.

Where there are less than five resident property taxpayers in a drainage district qualified to vote, three instead of five commissioners may be appointed by the police jury. Act No. 135, p. 225, of 1906.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 17.*]

6. DRAINS (§ 76*)—TAX ELECTION—VALIDITY.

The tax election in the drainage district was properly called by the board of commissioners. Board v. Board of Commissioners, 123 La. 590, 49 South. 204, reaffirmed.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 76.*]

7. DRAINS (§ 18*) — BOND ISSUES — RESTRICTION.

The restriction of a bond issue to one-tenth of the tax assessment does not apply to bonds based on acreage taxes, as to which the only restriction is that the issue shall not exceed the aggregate amount of the taxes to be raised by the levy of a tax not exceeding 25 cents per acre, and for a period not to exceed 40 years.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 18.*]

8. DRAINS (§ 88*)—DRAINAGE TAXES—COLLECTION.

Drainage taxes are collectible by the state tax collector at the same time and in the same manner as state taxes.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 88.*]

9. DRAINS (§ 82*)—DRAINAGE TAX ELECTION—OBJECTIONS TO VALIDITY.

Under section 16, Act No. 145, p. 254, of 1902, no drainage tax election can be contested after a delay of six months from the date of the promulgation of the result, on the ground of the irregularity, informality, or illegality of any of the proceedings, beginning with the petition of the taxpayers.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 82.*]

The Chief Justice and Monroe, J., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by the Board of Commissioners of Iowa Drainage District No. 1 against the Wilkins Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Pujo, Moss & Miller, for appellant. McCoy, Moss & Knox, for appellee.

MONROE, J. Plaintiff seeks to compel defendant to comply with a contract whereby it agreed to do certain dredging in consideration of the delivery to it of bonds, to be issued by plaintiff, of the par value of $19,000. Defendant admits the contract, and alleges its willingness to comply therewith, provided that the bonds which it is to receive are found to be valid; but it alleges that, for a variety of reasons, which are stated, the bonds are invalid, and, in that contention, it is joined by the Orange Land Company, Limited, which has intervened for that purpose. The suit is, frankly, an amicable one, in which all the parties before the court are interested in having a judgment rendered in favor of plaintiff, and yet it is expected that such judgment will establish a basis for stare decisis, which will be binding on this court with respect to the rights of persons who have adverse interests, but who are not here represented. Moreover, the judgment, whether it is so expected or not, will be regarded as establishing a precedent for other drainage districts, created and to be created, and for the public at large in its dealings with such districts, and with other organizations similar in character. The court is not, therefore, at liberty to deal with the matter as though it were one involving private interests, alone, which might be regulated by consent of the parties. Plaintiff is a public corporation which moves and has its being solely within the limits of the law of its creation, and, by conferring upon it the power to incur debt and

125 LA.—5

to levy and collect taxes for the payment of the same, the state has imposed upon the courts the obligation of seeing to it (so far as the matter may fall within their jurisdiction), for the protection of its own credit and of the rights of its citizens, that its creature does not travel beyond the limits thus fixed.

The Constitution (article 281, as amended, pursuant to Act No. 122, p. 207, of 1906) provides that:

"Drainage districts, through the boards of commissioners thereof, may incur indebtedness and issue negotiable bonds therefor, payable, in principal and interest, out of, and not to exceed, in principal and interest, the aggregate amount to be raised by said annual contributions during the period for which the same are levied."

In the instant case, the board of commissioners submitted to the qualified voters a proposition to vote a specified tax, of 25 cents per acre, upon the land lying in the district, for 13 years, and to authorize the incurring of an indebtedness of $30,000, to be represented by bonds, bearing interest at 5 per cent. per annum. The taxpayers were informed that the funds to be derived from the tax would be used, exclusively: (1) For the extinguishment of the debt; (2) in paying "the expenses of organization, and the running and operating expenses of said board, * * * and of operating the drainage canals, ditches, or machinery, owned, operated, or controlled by said drainage district * * *; (3) in providing such additional works, or extension canals, ditches, or drainage conduits as, in the judgment of said board, * * * may be necessary and proper, economically, to drain the property included within the limits thereof; (4) in paying the interest upon said bonded indebtedness."

The proclamation, calling the election, was issued in January, 1908, the election was held March 10, 1908, and the return of the election recites that:

"The votes cast at said election, to wit, four in number, cast by persons owning property in said district, or their proxies, of an assessed

valuation of $5,750, were cast in favor of the proposition, * * * to authorize the creation of a bonded indebtedness, of $30,000, and the levying of a special tax, of 25 cents per acre, on all the property in said district for a period of 13 years."

Thereafter the tax was levied for the year 1908, and up to May, 1909, had produced about $1,500. It is said, however, that it will produce annually $2,200 and hence that there will be collected during the 13 years $28,600. On the other hand, it appears that the amount required for the payment, with interest, of the $19,000 of bonds which it is proposed to deliver to the defendant, will be $25,750, so that not only will the proceeds of the proposed tax be insufficient to pay the debt of $30,000, which plaintiff was authorized to incur, but, after providing for the $19,000 of bonds to be delivered to defendant, it will furnish but $2,850 wherewith to maintain, for 13 years, the ditch, which defendant is to dig, pay the organization and operating expenses of the board, and provide the additional canals that may be found necessary. In view of the situation as thus presented, the plaintiff board, at a meeting held on May 6, 1909, adopted a resolution devoting the entire proceeds of the tax to the payment of the bonds to be delivered to defendant. So that, as the matter stands, after announcing to the taxpayers that, with $30,000 payable, with interest, in 13 years, from the proceeds of a specific tax of 25 cents per acre, it would be able to establish and maintain a system of drainage, and pay its organization and operating expenses, and, after being authorized to incur debt to that amount and impose the tax, upon the condition that the proceeds of the tax would be used in the manner stated in its announcement, the board finds that the amount to be realized will be insufficient for the purposes declared in its announcement, and now proposes to use the proceeds of the tax only so far as they will go in that direction. There are, however, several objections to the adoption of this course.

In the first place, the board has been authorized, by the vote of the four taxpayers, to incur a debt in excess of the amount that the tax, which it was, at the same time, authorized to impose, will pay, which is in contravention of the law under which it proceeded. In the next place, and as, perhaps, included in the reason stated, if, hereafter, a person should present himself as the innocent holder of one of the $30,000 of bonds authorized to be issued, but not included in the $19,000, to be delivered to defendant, it would be difficult to find a reason for denying him the right to participate in the distribution of the fund derived from the tax voted for the payment of the whole issue of bonds. In the third place, it would be grossly unfair, and, as we think, illegal, to force upon the taxpayers a system, or supposed system, of drainage, for which they voted, or allowed to be established without their votes upon the faith of representations which cannot be made good, and which supposed system cannot be made effective for lack of the funds necessary to its establishment and maintenance.

Our conclusion on this subject being sufficient for the purposes of the present case, we shall not undertake to pass upon the other questions which are presented.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of defendant, and of the intervener, rejecting plaintiff's demand, at its cost in both courts.

## On Rehearing.

LAND, J. It is admitted by the plaintiff that the acreage tax voted for 13 years will prove insufficient to meet a bond issue of $30,000, with 5 per cent. interest; but it is contended that such tax is more than sufficient to provide for the payment of the $19,000 of bonds tendered to the defendant, and that the

plaintiff board had the power to incur debt and issue bonds within the amount of the special tax provided for as the means of paying the principal and interest of the debt to be contracted.

In Oubre v. Town of Donaldsonville, 33 La. Ann. 386, where bonds were issued in excess of the taxes to be levied for their payment, the court held the municipality bound to the extent of such provision. This doctrine was reaffirmed in Gray v. Bourgeois, 107 La. 671, 32 South. 42; the court saying:

"We do not think that the authorization voted was null and void in its entirety from the mere fact that it attempted to convey a power greater than the taxpayers were competent to grant. The power granted should be held legal up to and within the amount of the special tax provided for as a means of paying the principal and interest of the debt to be contracted. Oubre v. Town of Donaldsonville, 33 La. Ann. 390. The authorities of Morgan City are authorized to act under the authorization as conferred upon them by the property taxpayers at the said election to incur debt and issue bonds as voted for to that extent, but no further."

See, also, Rathbone v. County Commissioners (C. C.) 73 Fed. 395, citing 38 Kan. 597, 16 Pac. 828, Chicago, K. & M. R. Co. v. Commissioners. See, also, Schmitz v. Zeh, 91 Minn. 290, 97 N. W. 1049, 1 Am. & Eng. Ann. Cas. 322.

This was the jurisprudence of this state when the tax and bonds now in question were voted and the contract was made between the plaintiff and the defendant. Even if this court were inclined to reverse the forgoing decisions, the change of jurisprudence could not be allowed to render invalid contracts, which, when made, were held to be lawful. Thompson v. Lee County, 3 Wall. 327, 18 L. Ed. 177.

It has been held that:

"Where an issue of bonds is only partially excessive, if the bonds are delivered at different dates, those first delivered up to the amount of the debt the municipality can lawfully create should be paid, and the others should be treated as nullities; but if the bonds were delivered at the same time, so that none has priority over the others, each bond is valid to the extent of its proportionate share of the debt lawfully created." 28 Cyc. 1584, 1585, citing Citizens' Bank v. Terrell, 78 Tex. 450, 14 S. W. 1003, Ætna L. Ins. Co. v. Burrton (C. C.) 75 Fed. 962, and Columbus v. Woonsocket Sav. Inst., 114 Fed. 162, 52 C. C. A. 118.

As the evidence shows that the proceeds of the special tax voted for 13 years will more than suffice to pay the $19,000 of bonds tendered to the defendant, and as such bonds will be the first issued and delivered, the defendant will be safe in accepting the same as a first lien on the special taxes, even should the plaintiff board hereafter issue and deliver other bonds of the same series in excess of the security voted by the taxpayers.

The evidence further shows that on May 6, 1909, the board of commissioners passed an ordinance pledging the entire acreage tax to the payment of the bonds to be delivered to the defendant.

Numerous other defenses were urged in the court below.

(1) It is urged that in order to comply with the law relating to the creation of a drainage district it is necessary for the police jury to divide the whole parish into drainage districts. Section 1, Act No. 159, p. 295, of 1902.

The said section authorized the police juries to divide their respective parishes into as many drainage districts "as they may deem necessary or advantageous for the purpose of more readily draining the lands in said parishes."

It follows that the law vests in police juries discretion to determine the number of drainage districts to be created in their respective parishes.

(2) "That the alleged ordinance of the police jury of said parish by which said alleged drainage district was attempted to be created does not describe all the land to be embraced in the proposed district."

The ordinance describes the territory by reference to government subdivisions and a plat as petitioned for by the property taxpayers. There has been an assessment made under such description, and all the property

taxpayers, save one, have paid the acreage tax. The sole delinquent has not paid taxes of any kind. The result shows that the district boundaries are sufficiently defined for all practical purposes.

(3) The objections that the ordinance was not entered on the minutes until after the tax had been voted and levied, and that the plat referred to has never been recorded, disclose mere omissions or nonessentials. The omission to transcribe a police jury ordinance on the minutes may be corrected at any time, nunc pro tunc. Bathurst v. Course et al., 3 La. Ann. 260. We have been cited to no law requiring the registry of such a plat.

(4) Three commissioners were properly appointed, as there were in the district less than five persons who were qualified electors owning real estate of the assessed value of $500. Act No. 135, p. 225, of 1906. Section 2, Act No. 159, p. 295, of 1902, has no application where there are in the district less than five persons qualified to serve as commissioners.

(5) The objection that Mr. Chalkley was a person not qualified to sit as a member of the board is not sustained by the evidence, which shows that he was never appointed a member of the board, but merely as an adviser.

(6) The objection that the board was not legally organized, because no vice president and treasurer had been elected, is bad, because the filling of neither office was necessary at the time the election was called and the tax levied. As a matter of fact, a treasurer was elected on the same day the tax was levied.

(7) The objection that the police jury of the parish of Calcasieu was the only body competent to have called the tax election is repei'ed by the recent decision of this court in Buard v. Board of Commissioners, 123 La. 590, 49 South. 204, overruling prior decisions to the contrary.

(8) The objection that there is no method provided by law for the holding and conducting of an election for a drainage tax on acreage is met by Act No. 317, p. 483, of 1908.

(9) The bond-issue restriction to one-tenth of the tax assessment does not apply to bonds secured by acreage taxes levied not on value but on quantity. The only restriction on a bond issue based on acreage taxation is that it shall not exceed the aggregate amount to be raised by the annual contributions resulting from the levy of a tax not exceeding 25 cents per acre, for a period not to exceed 40 years. Amendment of 1906 to article 281 of the Constitution. See Act No. 122, p. 207, of 1906.

(10) Under article 243 of the Constitution of 1898 all district and board taxes are to be collected in the same manner as state taxes. It results that the state tax collector is authorized to collect all kinds of drainage taxes. See section 21, Act No. 145, p. 255, of 1902; section 12, Act No. 159, p. 302, of 1902; Act No. 317, p. 483, of 1908; Act No. 170, p. 346, of 1898; Act No. 119, p. 167, of 1882.

(11) Section 16 of Act No. 145, p. 254, of 1902, relative to tax elections in drainage districts, reads as follows:

"Sec. 16. Be it further enacted, etc. That from and after a delay of six months from the date of the promulgation of the result of any such election, no one shall have any cause of action to contest the regularity, formality or legality of the petition of the tax payers or the resolution calling for any election herein provided, or of the ordering of the same, of the returns thereof, of the examination and count of the ballots, of the examination and canvass of the returns, of the declaration of the results, or of the promulgation of the results of any such election, or of any other formality or requirement in relation thereto, and that, after such delay, all such causes of action shall be lapsed, barred and prescribed."

This prescription was pleaded by the plaintiff in the court below and was properly sustained as to all alleged irregularities and illegalities covered by the statute.

(12) Other objections made by defendant are not supported by the evidence, such as

that the commissioners were not recommended by a majority of the property owners in number and amount; that the commissioners were not qualified; that the persons who acted as commissioners were not the persons appointed by the police jury, etc., etc.

Out of 22 property taxpayers, 14 in number, representing a majority in property values, petitioned the police jury to pass an ordinance creating the drainage district, and appointing the three commissioners who served in that capacity. None of the property taxpayers contested the election within six months, and all, save one, voluntarily paid the acreage tax for the first year. Under this state of facts, defendant has no good grounds to apprehend any future litigation on the same subject-matter on the part of any taxpayer.

Judgment affirmed.

The CHIEF JUSTICE and MONROE, J., dissent.