This is a suit brought to annul a bond issue authorized by the taxpayers of Cedar Grove, and, in the alternative, to enjoin the municipal authorities from disposing of the bonds otherwise than at par and for cash, and also to enjoin them from levying and collecting a tax to retire the bonds until they have been sold.
The suit grows out of an effort on the part of the municipal authorities to raise money with which to construct certain works of public improvement. In order to accomplish this purpose, the town council submitted to the duly qualified property tax payers of the *Page 136 
municipality a proposition to authorize the town to issue negotiable bonds in the sum of $300,000; the bonds to bear interest at the rate of 5 per cent. per annum, payable semiannually, and to run for a period of 30 years. The object of the bond issue was to raise funds to install a waterworks plant and sewerage system, and to erect a town hall, and to pave the streets. The bond issue was authorized at an election held August 10, 1920.
The assessment roll for the year 1919, the roll under which the taxpayers voted, shows a total assessment of $1,840,230; whereas that for the following year, which was filed September 23d, the year preceding the institution of this suit, shows an assessment of $3, 329, 180. The bonds have not been sold. The tax, however, was levied for the year 1920.
The plaintiffs allege that the bonds are null and void for the reason that they exceed 10 per cent. of the assessed valuation of all property in the municipality for the year 1919, which they contend is the assessment on which the 10 per cent. must be based. They also allege that the tax levy for the year 1920 to retire the bonds is null and void for the reason that the bonds have not been sold. They further allege that the town is about to exchange the bonds for work to be done on the improvements authorized; and they pray for an injunction, and pray that said bonds be decreed null and void, as stated in the beginning of this opinion.
The defendants, in their answer, assert the validity of the bond issue and tax levy: and in other respects deny the allegations of plaintiffs' petition. They also plead the prescription of 60 days. In their brief they urge that it is not the last assessment filed before the election, upon which the computation must be based, to determine the amount of a bond issue, but the last assessment filed before the bonds are issued. *Page 137 
In the lower court judgment was rendered restraining and prohibiting the defendants from selling the bonds for less than par, but in all other respects rejecting plaintiffs' demands.
 Opinion.
[1] Article 281 of the Constitution of 1898, as amended by the constitutional amendment proposed by Act 132 of 1912, and adopted by the people, and then inserted in the Constitution of 1913, under which article this bond issue was voted, provides that municipal corporations and certain other political subdivisions of the state, when authorized by vote of the property tax payers, may incur debt and issue negotiable bonds therefor. This article also provides, to quote the provision, that:
"The total issue of bonds by any subdivision for all purposes shall never exceed ten per centum (10%) of the assessed valuation of the property in such subdivision."
It will be observed that, while the above provision in quotations is to the effect that the total issue of bonds by a municipal corporation shall never exceed 10 per cent. on the assessed valuation, yet it does not say expressly whether that percentage shall be based on the last assessment filed before the submission of the proposition to the taxpayers for their approval or rejection, or whether it shall be based on the last assessment filed before the bonds are issued, nor is this stated elsewhere in the Constitution. Hence the matter is left to interpretation, and is one of the points to be decided in this case.
Until the amendment of 1910 (Act 197 of 1910) article 281 of the Constitution of 1898 expressly provided that no bond issue should exceed the percentage above stated, to be calculated on the last assessment filed preceding the election, and, in addition, contained the limitation that the total of the issues for all purposes should not exceed *Page 138 
that percentage. In the amendment of that year the former provision was omitted, and the latter retained. This omission was doubtless for the purpose of ridding the article of what was deemed a useless repetition, as to the percentage of bonds that might be issued, rather than to change its meaning in any other respect. Had the intention been to change the assessment on which the computation should be made to the last assessment filed preceding the issuing of the bonds, it is unlikely that the only remaining provision on the question should have been left as it is, without any language clearly indicating such a change.
Before the proposition is submitted to the property tax payers the municipal authorities must frame it. In framing it, they must have something definite to base it on. The taxpayers themselves, in order to reach a correct conclusion as to the measure of authority they may grant, ought to have something definite to act upon. The only definite thing to which they may refer, beyond what is contained in the proposition submitted, in measuring the authority they may grant, is the last assessment. If a future assessment is held to be the one intended, then a fact of importance at once becomes unknown; and the article of the constitution scarcely contemplates that the taxpayers should be called upon to act upon uncertainties, or to give uncertain authority, dependent upon future valuations for its effectiveness.
Therefore, as there is nothing in article 281 of the Constitution of 1898, as amended, and as carried into the Constitution of 1913, requiring that the computation be based on the last assessment filed prior to the date that the bonds are issued, and as the reasons that may be assigned are against that view, and support the view that such computation must be based on the last assessment filed before the election, we rule accordingly. *Page 139 
In this case, that assessment is the one of 1919.
[2] The bonds exceed 10 per cent. of the assessment of that year by something over one-third. Defendants, however, urge that it is the excess only that should be declared null and void. In this respect they are supported by the jurisprudence to which they refer. In the case of Board of Commissioners v. Wilkins Co., 125 La. 127, 51 South. 91, it was said, quoting from Gray v. Bourgeois, 107 La. 671, 32 South. 42, that:
"We do not think that the authorization voted was null and void in its entirety from the mere fact that it attempted to convey a power greater than the taxpayers were competent to grant. The power granted should be held legal up to and within the amount of the special tax provided for as a means of paying the principal and interest of the debt to be contracted. Oubre v. Town of Donaldsonville, 33 La. Ann. 390. The authorities of Morgan City are authorized to act under the authorization as conferred upon them by the property taxpayers at the said election to incur debt and issue bonds as voted for to that extent, but no further."
In those cases the tax authorized was not sufficient to retire the bonds in principal and interest. There is no difference in principle between them and the one at bar. In each the authority granted was exceeded. Those cases determine the question which is here under consideration; and therefore the bond issue voted will be declared null and void only to the extent that it exceeds 10 per cent. of the assessment for the year 1919.
[3] Plaintiffs also urge that, should the bond issue be decreed valid, which means even in part, still there was no authority to levy the tax to retire it for the year 1920, and that there will not be such authority until the bonds are sold. The tax levied was for the purpose of retiring the bonds. As the bonds have not been sold, and are therefore not outstanding, the tax levy is premature, and will be premature until they are sold. Article 281 of the Constitution of 1913, *Page 140 
after granting the authority to issue bonds, provides:
"And each year while any bonds thus issued are outstanding, the governing authorities of such subdivision shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund necessary to retire said bonds at maturity, provided that such special taxes, for all purposes as above set forth shall not in any year exceed ten mills on the dollar of assessed valuation of the property in such subdivisions."
It will be observed, from the above, that the authority to levy the tax is granted only when the bonds are outstanding. Hence the tax levy was premature, and the injunction sued out to prevent its collection will be perpetuated.
[4, 5] Defendants have pleaded the prescription of 60 days established by section 17 of Act 256 of 1910 against the attacks made by plaintiffs. This prescription has no application, however, as relates to that part of the bond issue that exceeds the constitutional limitation. To that extent the bond issue is in contravention of article 281 of the Constitution of 1913; and, such being the case, the prescription does not apply. St. Charles Municipal Drainage District v. Cousin, 130 La. 331, 57 South. 992. The prescription likewise has no application, when urged against an attack on the levy and collection of a tax to retire the bonds, where the tax is levied and sought to be collected when the bonds are not outstanding. Such an attack is not one to annul the bond issue, but to prevent the unauthorized and premature collection of the tax.
We find no error in the judgment of the court below prohibiting the disposing of the bonds for less than par and otherwise than by sale. Therefore the prayer of the defendants to amend the judgment in this respect is not granted. *Page 141 
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by declaring null and void said bond issue, in so far as it exceeds 10 per cent. of the assessed valuation for the year 1919 of all taxable property in said town of Cedar Grove, which assessed valuation amounts to $1,840,230, and it is adjudged and decreed that said judgment be further amended by perpetuating said writ of injunction in so far as it restrains said town from collecting said tax levied for the year 1920 and from levying said tax until said bonds are outstanding, but in other respects it is ordered and decreed that said judgment be affirmed; the appellees to pay the costs.
 *Page 299