[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 799 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 800 
In an original and amended bill of information it was charged that the defendant "* * * did unlawfully engage in the business of storing intoxicating liquor for the purpose of sale to-wit: thirty-one quarts of Bonded Whiskey, contrary to Union Parish Police Jury Ordinance Number 150, * * *."
Defendant's plea of unconstitutionality of the ordinance and motion to quash were overruled. After conviction, and denial of his motion for a new trial, he was sentenced *Page 801 
to serve ninety days in jail and to pay a fine of $350.
Defendant's appeal contains nine bills of exception:
Bill of Exception No. 1 was taken to the judge's overruling defendant's motion to require the State to disclose what ordinance or statute the prosecution was based upon; to inform the defendant under which of the several sentences of the ordinance he was being prosecuted and what kind of liquor he was charged with having, where it was stored, and "* * * what evidence of an intended sale existed and what kind of whiskey by brand or by name did the State claim he possessed for the purpose of sale. * * *."
In response to this motion, the district attorney amended the bill of information to state that the charge was "* * * contrary to Union Parish Police Jury Ordinance Number 150 * * *," the district court ruled that the State was not required to divulge to the defendant the other information requested.
The bill of information, as amended, charged the defendant with storage for sale of thirty-one quarts of Bonded whiskey. The State is not required to disclose in cases of this sort, in advance of the trial, the particular brand of whiskey "* * * or what evidence * * * existed." State v. Scott, 155 La. 222,99 So. 45.
Bill No. 2 was reserved to the overruling by the trial court of defendant's plea that *Page 802 
ordinance No. 150 of the Police Jury of Union Parish was not constitutionally adopted nor legally in effect. The principal ground of attack is that while the ordinance purports to have been passed on October 12, 1937, the resolution and minutes evidencing same were not signed by the officers of the Police Jury until long afterwards (October 1942 and later). Other grounds were that the Ordinance went beyond its title; that Act No. 17 of 1935, 1st Ex.Sess. (authorizing local option elections, etc.), is unconstitutional and, if constitutional, it was repealed by Act No. 203 of 1940; and that the election under which the ordinance was adopted had not been carried by a majority of the qualified electors.
Ordinance No. 150 is in evidence. The record shows that it was "read and adopted by sections, then re-read as a whole" and adopted by unanimous and recorded "yeas" and "nay" votes, and concluded: "* * * and the ordinance was accordingly declared adopted as written." This ordinance and the other ordinance and resolutions appertaining to the local option election held in Union Parish in 1937, under Act No. 17 of 1935, 1st Ex.Sess., were contained in the official Police Jury record book, which was presented to the Court by the secretary of the Police Jury and identified by him and Mr. Lindsey, who, at the time of the trial was President of the Union Parish Police Jury and had served continuously as President for a period extending for several years prior to 1937. *Page 803 
There is a certificate in the record signed by the Clerk of the Police Jury of Union Parish stating that the ordinance was adopted at a regular meeting "on the 16th day of February 1939." The heading of the same document is "Extracts from the minutes of the Police Jury of Union Parish, Louisiana, of the meeting held on October 12, 1937." (Italics ours.) The body of the ordinance states that same is passed by virtue of an election held on the "14th day of September, 1937," and, in another section — "that the ordinance shall take effect on and after midnight December 31, 1937." The date of the clerk's certificate is "16th day of February, 1939." We conclude that the clerk of the Police Jury inadvertently filled in, as the date of adoption of the ordinance, the date of his certificate "16th day of February, 1939," instead of the date "October 12, 1937."
The record shows that ordinance No. 150 was incorporated in the official Ordinance Book of Union Parish; that it was regularly presented, adopted, and promulgated, as required by law. While it was the duty of the President to sign the same, such a duty is ministerial and the informality may be cured at any time and cannot affect the validity of the ordinance duly passed and published. Board of Com'rs of Iowa Drainage Dist. No. 1 v. Wilkins Co., 125 La. 127, 51 So. 91; Bathurst v. Course et al., 3 La.Ann. 260; Fanchonette v. Grange, 5 Rob. 510; and Pacific Palisades Ass'n v. City of Huntington Beach et al., 196 Cal. 211,237 P. 538, 40 A.L.R. 782; Dillon on *Page 804 
Municipal Corporations, 5th Ed., Vol. 2, p. 607.
The defendant's contention that Act No. 17 of 1935, 1st Ex.Sess., is unconstitutional has been answered by this Court, see State v. Fuller, 209 La. 523, 25 So.2d 83.
A reading of the ordinance and its title indicates that the defendant's contention that the ordinance goes beyond its title is not well founded.
Act No. 203 of 1940, by which defendant contends Act No. 17 of 1935, 1st Ex.Sess., was repealed, is one fixing excise and license taxes on and providing for the issuance of licenses for the sale of intoxicating liquors. A stipulation was introduced showing the vote in the local option election to be 813 for the sale of liquors and 1410 against and that this 1410 votes wasless than one-half the qualified voters of the Parish at thattime. Doubtless, defendant relies, in making his contention, upon the portion of the act providing that the right of parishes and municipalities to issue licenses shall not be exercised in any parish or municipality which "by a majority vote of its duly qualified electors" shall determine that the sale of intoxicating liquors shall not be permitted; and the provision that, in a parish previously permitting the sale of liquor, such license may be issued "until a majority of the qualified electors" thereof determine by election to the contrary. The same act states that the decision as to licensing or not shall be made at an election held for the purposeunder the election *Page 805 laws of the State, indicating that the Legislature intended that the election would be under Act No. 17 of 1935, 1st Ex.Sess., and other existing election laws, and that the usual rule that a majority of those voting would determine the election, and the language "majority vote of its duly qualified electors" means "majority of the qualified electors," who exercise their right to vote at the election. If the construction that defendant contends were admitted, the effect of this revenue Act of 1940 would be, as a practical matter, to virtually abolish the control of the citizens of a parish or municipality over the matter of licensing the sale of liquor by requiring over 50% of the qualified voters to register their vote for a change either way.
The subject matter of Bills of Exception Nos. 3 and 4 are covered in the discussion of Bill No. 2.
Bill of Exception No. 5 was taken to the judge's overruling of defendant's objection to admit a statement from the sheriff that "he had complaints that defendant was selling intoxicating liquor." The judge, in his per curiam to this bill, stated: "The admission and the other evidence adduced on the trial of the case showed that defendant, on the date alleged, had stored for sale in his store and filling station 31 quarts of Bonded whiskey. The facts and circumstances established beyond every reasonable doubt the defendant's intention to sell said whiskey." *Page 806 
The wording of the per curiam indicates that the district judge relied upon other evidence for finding the defendant guilty other than the statement of the sheriff that he had complaints, and hence, had the evidence that the sheriff had received complaints not been admissible, no prejudice would have resulted to the defendant by the introduction, as the district judge was well-schooled in the law and would not have accepted the fact that the complaints were made, as evidence that defendant was engaged in the sale of intoxicating liquor.
Bill of Exception No. 6 was taken when the State offered the testimony of the deputy sheriff as to whether or not the contents of one of the bottles labeled "whiskey" was in fact whiskey. Defendant objected on the ground that the witness was not an expert and since no analysis had been made, his testimony was "immaterial, irrelevant, hearsay, and opinion testimony." The judge's per curiam stated: "Mr. Tucker broke the seal on one of the bottles of whiskey found in defendant's possession, tasted its contents and testified that it was whiskey. He was familiar with the odor and taste of whiskey and was, therefore, qualified to testify on the subject."
In the defendant's brief, he urges that it was error for the judge to allow Mr. Tucker to testify without his first being qualified as an expert. Evidently, the Court had heard the same witness, a *Page 807 
deputy sheriff, testify about liquor before and accepted him as qualified to identify whiskey as such without requiring new testimony of his expertness in each case. We know of no reason why, in a trial before a judge, without a jury, the judge should not take into account his knowledge of the qualifications and experience of persons well known to him in the community such as the deputy sheriffs, who customarily wait on the court and necessarily appear often as witnesses. It is a well-known fact that many laymen are qualified to state, after tasting, whether the contents of a particular bottle is whiskey or not.
Bill No. 7 was reserved when the judge permitted the State to produce and introduce in evidence thirty-one bottles purporting to be Bonded liquor, the contents of one of which had been tasted and tested by Monroe Tucker, Deputy Sheriff (Bill No. 6). The defendant's objection that the bottles had not been identified or proven to be liquor goes to the effect of the testimony rather than to its admissibility. The contention by defendant that there was no proof that the bottles contained liquor is answered by the per curiam of the trial judge: "The proof in the case shows that all 31 of the quart bottles contained whiskey."
Bill No. 8 was taken to the judge's refusal to order the State to produce the search warrant under which the defendant's premises had been searched. The judge gave his reasons for this ruling in *Page 808 
his per curiam, with which we agree: "No legal reason is shown for the production of the search warrant. The Sheriff had a search warrant at the time he searched the defendant's store and found the 31 quarts of whiskey and no issue is presented because of his failure to produce said warrant on the trial."
Bill No. 9 was reserved to the judge's refusal to grant a new trial and presents nothing not already covered by the other bills, and in the rulings complained of, we find no error.
The conviction and sentence are affirmed.
O'NIELL, C. J., concurs in the decree but not in the comment on Bills of Exception No. 5 and No. 6.
PONDER, J., absent.