(57 South. 992.)

No. 19,258.

ST. CHARLES MUNICIPAL DRAINAGE DIST. v. COUSIN.

(Feb. 26, 1912.)

*(Syllabus by the Court.)*

1. DRAINS (§ 66*) — ASSESSMENT — CONSTITUTIONAL PROVISIONS.

The power of the majority, in acreage, of the taxpayers, and of the board of commissioners of a drainage district, acting at the instance of such majority, to impose a burden upon the minority, or their lands, without the consent of such minority, is conferred and defined by the Constitution, and where the majority submit to the board a proposition upon that subject which the Constitution does not authorize, the board has no power to accept or act on it, and, a fortiori, has no power to take action which it would be unauthorized to take upon a proposition which conformed to the requirements of the Constitution.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72; Dec. Dig. § 66.*]

2. DRAINS (§ 14*) — ASSESSMENT — CONSTITUTIONAL PROVISIONS.

A petition by property taxpayers, for the establishment of a drainage district, which specifies the amount of the acreage tax, or forced contribution, to be levied, is unauthorized, as the law fixes the limit, and the law provides that the tax may be increased or diminished, within the limit, as the needs of the district may require; and the board of commissioners is without power to act upon such petition.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 5, 6; Dec. Dig. § 14.*]

3. DRAINS (§ 75*)—ASSESSMENT — CONSTITUTIONAL PROVISIONS.

The board of commissioners of a drainage district is without power to levy an acreage tax or forced contribution for an indefinite period, or for a term of, say, 40 years, since the Constitution and the law require that such tax shall be levied annually, and may be increased or diminished as the needs of the district may require.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72; Dec. Dig. § 75.*]

4. DRAINS (§ 13*)—SUBDRAINAGE DISTRICT—CONSTITUTIONAL AND STATUTORY PROVISIONS.

The Constitution and the statute provide for the establishment of subdrainage districts, and make them autonomous, and there is no more authority, or reason, for confusing their interests and averaging the cost of the work to be done in them than for confusing the affairs of drainage districts or school districts.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 4; Dec. Dig. § 13.*]

5. DRAINS (§ 82*) — PROCEEDINGS AGAINST DRAINAGE DISTRICT—PRESCRIPTION.

The prescription, of 60 days, established by section 28 of Act No. 317 of 1910, has no application to proceedings which are not only unauthorized by, but in contravention of, the law, constitutional and statutory.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 81, 83–87; Dec. Dig. § 82.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the St. Charles Municipal Drainage District against Edward P. Cousin. From a judgment for defendant, plaintiff appeals. Affirmed.

H. L. Favrot, for appellant. McCloskey & Benedict, for appellee.

MONROE, J. Plaintiff alleges that defendant agreed to buy, at the par value, $50,000 of bonds issued by it, and that, without sufficient reason, he now refuses so to do, and it brings this suit to compel specific performance of the alleged contract. Defendant admits that he agreed to buy bonds to the amount stated, but alleges that it was upon the express condition that they should be valid obligations, based upon legal proceedings and binding upon plaintiff and the taxpayers, and he alleges that the bonds tendered are invalid and are predicated upon proceedings which were illegal and in contravention of the Constitutions of the United States and of the state of Louisiana, all as set forth in the answer and supplemental answer. We learn from the record that on or before May 2, 1911, there was presented to the police jury of

the parish of St. Charles a petition reading as follows:

· "We, the undersigned owners of land in the St. Charles municipal drainage district, hereby petition the honorable board of commissioners of the said drainage district to levy a tax on our lands of $2 per acre, per year, in order to accomplish the work of drainage and reclamation in said district, and we bind ourselves to the payment of said tax, when levied. We further petition said drainage board to issue bonds, secured by said tax, to the extent of $350,000, in such manner as they may deem advisable, and to sell said bonds according to law, applying the proceeds of sale of said bonds to the drainage and reclamation of lands in said drainage district."

The petition bears the signatures of 35 individuals and corporations, to whom are assessed 14,055.39, of the 15,791.11, acres of land included in the proposed drainage district (of which 14,055.39 acres, a single individual, Mr. Julius F. Funk, appears to be the owner of 13,486.18 acres), and, in compliance with their request, the police jury adopted an ordinance establishing and delimiting the St. Charles municipal drainage district and creating, for its governance, a board of commissioners, the members of which met and organized on July 12th, and on July 24th, in their corporate capacity, adopted a plan for the drainage of the district, which had been prepared by the John A. Kruse Engineering Company (a firm employed, apparently, by the board) and approved by the board of state engineers, after which the board of commissioners proceeded to levy a forced contribution, or acreage tax, and to authorize the issuance of bonds, predicated thereon, for the carrying of said plan into execution. As to the levying of the contribution and issuance of the bonds, the resolution of the board, after a preamble reciting the steps previously taken, reads, in part, as follows:

"Therefore, be it resolved: That, complying with the petition of property holders, filed with the secretary of this board, and the cost of the work having been duly and properly ascertained in accordance with law, the board of commissioners of the St. Charles municipal drainage district do hereby levy, annually, an acreage tax, or forced contribution, of not less than one dollar and fifty cents per year upon every acre of land in this drainage district, the said levy to begin with the year 1911, and continue for a period not longer than forty years, consecutively, or until any bond issue secured by the tax here levied shall have been completely paid, redeemed and retired, in principal and interest. Be it further resolved: That, in order to carry out, immediately, the work of reclamation, leveeing and pumping, contemplated by the report of the engineers made herein, this board authorizes the capitalization of the said tax hereinabove referred to, to incur an indebtedness of $22.10 per acre, on every acre of land in said district, aggregating $350,000, to be represented by 450 negotiable bonds, of $500 and $1,000 each, payable within forty years from their date and bearing 5 per cent. interest, per annum, from their date until paid, the first two hundred of said bonds to be of $500 denomination," etc. (And then follow a number of details in regard to the form of the bonds, the manner of their issuance and sale, the sinking fund to be provided, etc.)

Other preambles and resolutions, passed, apparently, at the same session of the board, are as follows, to wit:

"Whereas, by resolution of this board, passed this day, on a petition of more than two-thirds, in acreage, of the property taxpayers owning lands in this district, a tax of $1.50 per acre, beginning with the year 1911, and for 40 years, consecutively, being the years 1911 to 1950 inclusive, was levied, in accordance with the Constitution and laws of this state: Therefore, be it resolved that this board levies and orders the levy and collection of said tax of $1.50 per acre, for 40 years, consecutively, being the years 1911 to 1950, inclusive, and it is further resolved that the president of this board should, and he is hereby instructed to, do and cause to be done whatever is required by law to make effective the levy of said taxes and to collect the same. Be it further resolved that a certified copy of this resolution be forwarded to the assessor and a certified copy to the sheriff of the parish of St. Charles, to evidence their authority to assess and collect the said tax. Be it further resolved that the resolution levying said taxes, with the original petition of the property holders calling for said levy, be also sent to the clerk of the court of the parish of St. Charles to record the same in mortgage records in said parish and that they also be published in the official journal of the parish of St. Charles and that a copy of these proceedings be forwarded to the Secretary of State."

*    *    *    *    *    *    *    *

"Whereas, it will become necessary to provide for the expenses of maintenance and operation

and for the legitimate running expenses of this board: Therefore, be it resolved that a committee on budget is hereby appointed, composed of three members of this board, whose duty it shall be to· make a budget of the expenses to be incurred by this board for its operation, and that this budget committee be also instructed to ascertain what will be necessary for maintenance, in order that this board may provide, by taxation, whatever may be necessary to this end. Be it further resolved that, as soon as the figures are ascertainable, this board will then, by resolution, fix an acreage tax sufficient for maintenance, operation and expenses."

The petition of the taxpayers and the resolutions above quoted were published in the official organ of the parish on July 29, 1911, and, so far as the record shows, no opposition to the plan thus proposed and adopted has been made by any owner of property in the district, nor has any such owner appeared in this suit.

The law upon which plaintiff relies is to be found in the amendment to article 281 of the Constitution, proposed by means of Act No. 197 of 1910, and adopted in November of that year, and in the Acts Nos. 256 and 317 of the session of 1910. Defendant attacks the amendment to the Constitution and the Act No. 317, as contravening the fifth and fourteenth amendments to the Constitution of the United States, and further attacks the Act No. 317 and the Act No. 256, upon other grounds. We pretermit the consideration of the constitutional questions thus presented, however, and shall confine our attention to other questions which appear to us to be decisive of the case.

Assuming article 281 of the Constitution, as amended pursuant to Act No. 197 of 1910, to be proof against defendant's attacks, that part of it which bears upon the questions here at issue reads:

"When the character of any land is such that it must be levied and pumped in order to be drained and reclaimed, the board of drainage commissioners of the district in which the land is situated shall, upon the petition of not less than a majority, in acreage, of the property taxpayers, resident and ·nonresident, in the area to be affected, ascertain the cost of drainage and reclaiming said land and incur debt against said land for an amount sufficient to drain and reclaim it and issue for said debt negotiable bonds running not longer than forty years from their ·date and bearing interest at a rate not exceeding 5 per cent. per annum, payable annually or semiannually, which bonds shall not be sold for less than par; and said board of drainage commissioners shall levy annually upon said land forced contributions or acreage taxes in an amount sufficient to pay the interest, annually or semiannually, and the principal falling due each year or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity; provided, that such forced contributions, or acreage taxes, for all purposes, shall never exceed $3.50 per acre, per annum."

It will thus be seen that a majority, in acreage, of the property taxpayers (two-thirds, by the act No. 317) are granted the right to require the board to ascertain the cost of the proposed drainage, incur a debt against the land, sufficient to defray that cost, issue negotiable bonds to an amount sufficient to pay the debt, and levy an acreage tax sufficient to pay the bonds; and that, in order to accomplish those results, the board may levy an acreage tax within a limit of $3.50 per acre per annum.

[2] In this instance, the petitioners have undertaken, in the beginning, to impose upon the board the condition, which they had no right to impose, and which the board had no right to accept, to wit, that the limit of taxation should be $2, instead of $3.50, an acre, as fixed by the Constitution. It may be said, by way of answer to this objection, that the taxpayers, having petitioned for the drainage, would be obliged to submit to the $3.50 limit if conditions, in the future, should require it; but it is not so clear that their proposition could be thus divided against them, or that the minority taxpayers, as to whom the proceeding is in invitum, could be held otherwise than according to the strict letter of the law. It may also be said that the board, having adopted the $2· limit, as proposed, the matter stands as though that

limit had been adopted by it without suggestion. Quoad the holders of the bonds, however, the limit must be $3.50, as fixed by the Constitution, and the board cannot disable itself from levying the tax up to that limit, should it become necessary so to do in order to pay the debt. It is to be remembered, in that connection, that the debt is to be incurred against the land, and not against the owners, and, though land is, as a rule, to be found where one leaves it, it is sometimes carried out to sea by the current of a great river, and is sometimes so deeply submerged as to amount to the same thing. The concluding sentence of section 21 of the Act 317 reads:

"The acreage tax thus levied may be increased or diminished as the needs of the district may require."

But, if the petitioning taxpayers have the right to stand upon their proposition, and the buyers of the bonds have the right to hold them to it, there can be neither increase nor diminution in the tax; but it must remain at $2 per acre per year, neither less nor more, at least, until the bonds are paid, if not for the 40 years for which the resolutions of the board purport to levy it.

[3] Plaintiff has, not only disregarded, but directly contravened, the law, constitutional and statutory, upon which it now relies, in another particular, to wit: The Constitution, as amended, provides that:

"Said board * * * shall levy, *annually,* upon said land, forced contributions," etc.

And Act 317 of 1910, § 21, reads:

"They (the boards) shall have power, and it is hereby made their duty, acting within the authority of the Constitution and law that may be, then, in force, to levy, *annually,* an acreage tax, or forced contribution," etc.

And no power is conferred by either Constitution or statute to levy such acreage tax or forced contribution in any other way.

The plaintiff board has, however, assumed to levy an acreage tax of $2 per year, for 40 years, and it passed a second resolution for the apparent purpose of being more explicit to that effect.

[4] The record discloses still another instance in which the plaintiff board appears to have ignored the language and meaning of the law which it invokes, to wit, in the levying of a *uniform* acreage tax upon the whole of the land included within the district, without regard to the fact that, according to the report and plan adopted by it, the district had been divided into subdistricts, the cost of draining which will not be uniform. The law referred to, both constitutional and statutory, makes special provision for subdrainage districts, and makes them autonomous, and we can find no more authority, or reason, for confusing their interests and averaging the cost of the work to be done in them than for confusing the affairs of drainage districts or school districts.

[1] The power of the majority, in acreage, of the taxpayers, and of the board, acting at their instance, to impose a burden upon the minority of taxpayers, or their lands, without the consent of such minority, is conferred and defined by the Constitution, and, where the majority submits to the board a proposition, upon that subject, which the Constitution does not authorize, the board has no power to accept or act on it, and, a fortiori, has no power to take action affecting the minority which it would be unauthorized to take upon a proposition which conformed to the requirements of the Constitution.

[5] To the suggestion that the objections urged by defendant are barred by the prescription of 60 days, established by section 28 of Act 317 of 1910, and running from the publication of the petition of the taxpayers and of the resolutions adopted

by the board in connection therewith, the answer is that the prescription invoked has no application to proceedings which are, not only unauthorized by, but in contravention of, the Constitution and of the law whereby it is established.

The judgment appealed from, which rejects plaintiff's demand, is, accordingly, affirmed.