On Rehearing.
PROVO STY, X
The plaintiff drainage district was created under the provisions of Act No. 159, p. 293, of 1902. Under said act, and under article 281 of the Constitution as amended by joint resolution No. 122 of 1906, adopted November 6, 1906, said district had authority to levy annual acreage contributions, or taxes, on all the lands of the district in an amount not exceeding 25 cents per acre for a period not exceeding 40 years, and to issue bonds not to run for a longer period than 40 years and “not to exceed in principal and interest the aggregate amount to be raised by said annual contributions during the period for which the same are levied.”
Under this authority, said district, in June, 1909, levied a three cents per acre tax for 40 years, and issued $60,000 of interest-bearing bonds predicated thereon, payable in 40 years; and in February, 1910, levied a six cents per acre tax for 40 years, and issued $165,000 of interest-bearing bonds predicated thereon, payable in 40 years.
This was the situation of things when in 1910 said Act No. 159 of 1902 was amended *249 by Act No. 317, p. 542, of 1910, and said article 281 of the Constitution was amended by joint resolution No. 197 of 1910, adopted at the November election, 1910.
Said Act No. 317 of 1910 extended to existing drainage districts the privilege of reorganizing under its provisions. The plaintiff district availed itself of this privilege, and thereafter, by proceedings whose regularity is conceded except in the respects hereinafter to be mentioned, authorized the issuance of $500,000 of .bonds, and levied a 16 cents per acre acreage tax to meet the payment of same. Defendant agreed to buy 20 of these bonds of $1,000 each, but now refuses to take them, and this suit is to compel him to do so.
The grounds of his refusal are:
First. That the limiting of said rate of taxation to 16 cents per acre per annum is in violation of article 281 of the Constitution, which allows a rate of 50 cents.
Second. That the denomination of (the said bonds has not been fixed in such a way that the yearly payments in capital and interest shall be as nearly equal as practicable, as is required by section 28 of Act No. 256, p. 426, of 1910.
Third. That the full amount of said 16 cents tax was levied at once for the entire period of 40 years; whereas article 281 of the Constitution, as amended by Act No. 197 of 1910, adopted at the November election, 1910, and sections 27 and 29 of Act No. 256, p. 426, of 1910, require that the levy be made annually, and only in an amount sufficient to meet the payment of the bonds in capital and interest as they become due.
Fourth. That in submitting to a vote of the property taxpayers of the district the proposition to issue said $500,000 of bonds and to levy said 16 cents tax, the plaintiff district did not at the same time submit the proposition to ratify the two previous issues of bonds, as is required by section 17 of said Act No. 317 of 1910 to be done.
There is no dispute as to the facts of the case.
We find no merit in the first ground. The part of article 281 to which this ground of objection refers reads:
“Drainage districts shall, in addition to the powers hereinabove granted, have the further power and authority to levy and assess annual contributions or acreage taxes on all lands situated in such districts, for the purpose of providing and maintaining drainage systems, not exceeding fifty (50) cents per acre for a period not exceeding forty (40) years,-when authorized to do so by a majority in number and amount of the property taxpayers of said district,” etc.
Authority is here given to vote and levy taxes “not exceeding fifty cents per acre.” This does not mean that a lower rate may not be voted and levied. The case is not analogous with that of St. Charles Municipal Drainage District v. Cousin, 130 La. 331, 57 South. 992. The latter case involved a different part of article 281, a part by which direct and absolute authority is conferred upon the drainage district commissioners to levy a tax not exceeding $3.50 per acre, whenever drainage work has been petitioned for, and by which the petitioners are not left, or given, any discretion with regard to the amount, or rate, of the tax, but are restricted to simply asking that the work be done. In the present case, the discretion of deciding whether the tax shall be levied is confided to the property taxpayers. It is for them to decide whether a tax not exceeding 50 cents per acre shall, or not, be levied. They are not put in the alternative of either voting a tax of 50 cents per acre or none at all, but are given the discretion of voting a tax not exceeding 50 cents per acre; that is, as much less as they please, but not exceeding that figure.
The second ground of objection has better foundation. The denomination of the bonds has not been so fixed that the amount to be *251 paid each year shall be as nearly equal as practicable. For instance, 32 bonds of $1,000 mature in 1916, at which time the interest at 5 per cent, on the $500,000 of bonds will be $25,000, making a total of $57,000; whereas, only eight bonds of $1,000 each mature in 1917, when the interest will be $25,400, making a total of only $31,400 — a difference of $25,600 between these two years. And yet section 28 of Act No. 256 of 1910 positively requires that the amount to be paid each year shall be as nearly equal as practicable. The said requirement must be assumed to have been taken into consideration by the property taxpayers in giving their consent and vote for the tax. I-Ience those taxpayers might be well founded in resisting hereafter the tax of any one year that might be sought to be levied in disregard of that. requirement. In other words, the taxpayers having consented to be taxed one-fortieth of $500,000, plus interest, each year, or as nearly as practicable that amount, might be well founded in resisting a much greater tax in any one year. The tax provided for meeting the bonds offered to defendant might therefore be jeopardized, and the bonds be subjected to undesirable, if not serious, complications.
The third ground of objection is equally well founded. We agree with counsel for plaintiff that the first paragraph of article 281 of the Constitution, as amended by Act No. 197, p. 332, of 1910, has reference only to the 10 mills ad valorem tax authorized by it to be levied. It reads:
“Art. 281. Municipal corporations, parishes or school, drainage, subdrainage, road, navigation” (or sewerage districts, the city of New Orleans excepted, hereinafter referred to as subdivisions), “when authorized to do so, by a vote of a majority in number and amount of the property taxpayers, qualified to vote under the Constitution and the laws of this state, who vote at an election held for that purpose, after due notice of said election has been published for thirty (30) days in the official journal of the municipal corporation or parishes, and where there is no official journal, in a newspaper published therein, may,_ ‘through-their respective governing authorities,’ incur debt and issue negotiable bonds therefor, and each year while any bonds issued to evidence such indebtedness are outstanding, the governing authorities of such subdivision shall levy and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually of semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity; provided, that such special taxes, for all purposes, shall not in any year exceed ten (10) mills on the dollar of the assessed valuation of the' property in such subdivisions.”
The tax which this paragraph requires to be levied, “each year” is fixed at not exceeding 10 mills on the dollar. This measuring of the tax by mills shows unmistakably that the tax which is thus required to be levied “each year” is the 10 mills ad valorem tax and no other.
But the 16 cents acreage tax in question in the present case has been levied in pursuance, and under the provisions, of Act No. 256, p. 426, of 1910, entitled:
“An act to define the subdivisions of the state; to prescribe the mode and manner of calling, holding and promulgating the results of elections therein for the purpose of levying a special tax or forced contribution or issuing bonds; to prescribe the manner of payment of the interest and principal of such bonds, etc.”
Thus it is seen that one of the purposes of the act is to “provide the manner of levying such tax.” Now, section 29 of the said act reads:
“Section 29. Be it further enacted, etc. That if the bonds authorized to be issued are to be paid in principal and interest by the annual levying of an acreage tax or forced contribution for an amount to pay the interest and principal of such bonds, then the governing authority creating the debt and issuing the bonds shall fix a time, which shah not be longer than five years from the date of the bonds for the beginning of the maturity of such bonds, and such governing authority shall assess and collect such acreage tax or forced contribution as shall be necessary to pay the annual interest due upon the bonds and maintain the works or drainage of the subdivision issuing the bonds until said bonds begin to mature, after which time a sufficient acreage tax or forced contribution shall be levied and collected each year as will maintain the works or drainage system and *253 pay the annual interest due on all the outstanding- bonds and the principal of the bond or bonds next due. That in fixing the amount due each year, the governing authority issuing the bonds shall issue same for such denominations as when the annual interest is added thereto, shall make the payments each year as nearly equal and uniform as practicable.”
It is here said that:
_ “A sufficient acreage tax or forced contribution shall be levied and collected each year as will maintain the works or drainage system and pay the annual interest due on all the outstanding bonds and the principal of the bond or bonds next due.”
The requirement here is that the tax shall be levied each year, and only in an amount sufficient to meet the expenses and the liabilities of each year. Such a requirement is inconsistent with a levy at one time of the entire amount of tax authorized by the election for the entire period of 40 years. The Constitution itself (article 281) speaks only of an annual tax for 40 years, which does not necessarily mean a tax levied for only one year at a time, for 40 consecutive years; but may mean a tax levied once and for all for the entire period of 40 years, and collectible each year. But the expression “levied each year,” contained in said section 29 of Act No. 256 of 1910, is not' susceptible of any other interpretation than that the levy of the tax must be renewed each year and for only one year, and only for the amount needed to meet the expenses and liabilities of that year. That expression is the exact equivalent of the word “annually,” which was given that interpretation in the recent case of St. Charles Municipal Drainage District v. Cousin, 130 La. 331, 57 South. 992.
This irregularity of levying the entire tax at one time instead of year by year, as the law requires, occurring as it does in the proceedings subsequent to the election, can affect in no way the validity of the election, and is manifestly separable from the rest of the proceedings by which the debt has been authorized to be created and the bonds authorized to be issued, and is therefore reparable by the easy process of repealing that part of the ordinance containing this irregularity and enacting in place thereof an ordinance in conformity with the requirements of the law. The said unauthorized levy has not had the effect of depriving the plaintiff board of the authority vested in it by law and by the vote of the taxpayers of levying the tax in question annually. The said act levying the said tax all at once for the 40 years is simply unauthorized, null, and void; that is all.
The fourth ground of objection must also be maintained. Act No. 317, p. 542, of 1910, is explicit that where an already existing drainage district reorganizes under its provisions, and finds that the proceeds of the bonds already issued by it are insufficient to complete its work, and desires to issue more bonds, and for doing so submits to the vote of the property taxpayers the proposition of such an additional bond issue, it must, at the same time, submit at said election the proposition of ratifying all previous bond issues. Why such a provision was inserted in said act does not concern us. Suffice it that we find it in section 17 of said act in express terms. Thus:
“That * * * if in the opinion of the said commissioners, the bonds authorized to be issued by them to complete the work contemplated by said district will not raise the necessary funds, then the said drainage district shall have the power after its reorganization to submit the proposition to the property taxpayers as provided for in this act, as to whether or not the bonds to the constitutional limit or to a sufficient amount necessary to complete said drainage shall be issued. In voting on this proposition, the property taxpayers voting at said election shall vote to ratify the bonds already issued, and vote for the issuance of a sufficient amount to complete the said drainage work not to exceed the constitutional limit.”
The previous bond issues were not submitted for ratification as here required. This irregularity is fatal to the validity of the bond; for the plaintiff drainage district *255 is a creature of the Legislature, and therefore whatever the Legislature enjoins upon it is the law of its being and the measure of its powers.
This irregularity is not cured by the statutory prescription of 60- days curing irregularities in the manner of holding the election; for this is not an irregularity in the manner of holding the election, it is the failure to submit to the vote of the property taxpayers a proposition required by law to be submitted along with the proposition to vote the additional bonds.
For the reasons hereinabove given, the decree of this court herein is reinstated and affirmed.