PROVOSTY, J.
Article 281 of the Constitution, as amended by joint resolution 197 of 1910, submitted to the electors of the state and adopted at the election of November, 1910, authorizes the governing authorities of road districts to incur debt and issue bonds for the purpose of constructing, improving, and maintaining public roads and highways, when authorized to do so by a vote of a majority in number and amount of the property taxpayers of the road district, qualified to vote under the Constitution and laws of the state, who shall have voted at an election held for that purpose. It provides that “no bonds shall be issued for any other purpose than that stated in the submission of the proposition to the taxpayers, * * * or for a greater amount than therein mentioned,” thereby implying that the amount of the debt proposed to be created and the purpose of its creation must be submitted to the vote of the taxpayers; but it nowhere - provides, either expressly or impliedly, that the rate of the tax shall be thus submitted. All that it says touching the rate of the tax is that “a sufficient tax” shall be levied each year to meet the payment of the bonds. The provision on that point reads as follows:
*758 “Each year while any bonds issued to evidence such indebtedness are outstanding, the governing authorities of such subdivision shall collect and levy annually, in excess of all other taxes, a sufficient tax to pay the interest, annually or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity: Provided, that said special taxes, for all purposes, shall not in any year exceed ten mills on the dollar of the assessed valuation of the property in such subdivisions.”
The taxpayers of road district No. 1 of the parish of Jefferson petitioned the police .jury of that parish, which, under the law, is the governing body of the road district, to hold an election for taking the sense of the taxpayers on a proposition to incur $100,000 of debt and issue bonds to represent same; and this was done. And like proceedings were had for road district No. 2.
In all the proceedings by which this was done and by which the said two road districts were created, the prescriptions of the -statutes and constitutional provisions governing such matters were exactly observed, except that the rate of the tax to be levied for meeting the payment of the bonds was limited to five mills, instead of being left at ten mills, as provided in said article 281. This limitation of the rate of the tax at five mills is found at every step of the proceedings, in the petition of the taxpayers, in the submission of the proposition to the vote of the taxpayers, and in the proceedings by which the debt was authorized to be created and the bonds issued.
[1] This fixing of the rate of the tax at a lower limit than that prescribed by said article 281 was held fatal to the validity of the bonds in the case of St. Charles Municipal Drainage District v. .Cousin, 130 La. 331, '57 South. 992. The bonds there in question were drainage bonds, but the two cases are undistinguishable in principle.
It is contended, however, that this defect, if defect it be, was cured by the curative provisions added to this same article 281 by an amendment thereto proposed by joint resolution No. 132, p. 164, of 1912, and adopted at the election of November 5, 1912.
There are two of these curative provisions. One is the concluding sentence of paragraph 2 of said article 281, as amended, and reads:
“All bond issues heretofore authorized by taxpayers of any subdivision at any election not contested on any ground of fraud, are hereby recognized and validated.”
The other constitutes the concluding paragraph of paragraph 6 of said article 281, and reads:
“Where bonds of any subdivision have been heretofore issued for any of the purposes specified in paragraph 1 of this article and the issue has been authorized by the vote of a majority in number and amount of the property taxpayers qualified to vote under the Constitution and laws of this state who voted upon the proposition to issue such bonds at an election held for that purpose and where such bonds have been issued and sold by such subdivision for not less than par value thereof, the said bonds or any refund issue bonds or renewal refunding bonds * * issued for said purposes specified in paragraph 1 of article two hundred and eighty one (281) are hereby validated, ratified and confirmed: Provided that such bonds did not at the time of their issue exceed ten per centum of the assessed valuation of the property in such subdivision, and such bonds hereby ratified, approved and confirmed shall be deemed to be the valid and incontestable obligations of such subdivision and a tax for the payment of the principal and interest thereof and to create a sinking fund for the redemption shall be levied and collected in the manner and within the limits prescribed by said paragraph 1 of this article. This entire article is to be considered a full grant of power to the subdivisions of the state as set forth therein.”
[2] The first of these curative provisions is sweeping in its terms, “all bond issues.” In its terms, therefore, it applies to the bonds issued by any of the subdivisions authorized by said article 281 to issue bonds, namely:
“Municipal corporations, parishes and school, drainage, subdrainage, road, subroad, navigation or sewerage, districts, * * * hereinafter referred to as subdivisions of the state.’’
But if given this broad application it takes all the wind out of the sails of the subsequent elaborate paragraph found at the end *760 of paragraph 6, which in terms purports to validate the bonds “issued” by any subdivision “for any of the purposes specified in paragraph 1 of this article,” and reduces this subsequent elaborate curative provision to the condition of a useless appendage. Paragraph 2, of which the first of these curative provisions is the concluding sentence, has reference exclusively to drainage districts; and the inference is that its said concluding sentence has reference in like manner exclusively to drainage district bonds.
[3] The subsequent curative provision, applying in its terms to the bonds issued by “any subdivision,” does not purport to cure all bonds theretofore issued, but only such as had been not only theretofore issued but also theretofore sold. And therefore the question arises whether the bonds in question, in the present ease had already been sold at the date of the adoption of the said amendment, on November 5, 1912.
The facts are that the police jury of Jefferson parish, which is by law the governing body of said road districts, and the defendant in this case entered into a contract on the 2d of November, 1912, three days before the adoption of said amendment, by which the police jury agreed to sell, and the defendant agreed to buy, the entire issue of the said bonds, $200,000, at par, subject to the condition, however, that defendant should become the successful bidder for the road work, for the doing of which the bonds were issued, and subject also to the condition that the bonds were valid. Subsequently, at a date not fixed either in the evidence or in the pleadings, the defendant became the successful bidder for $10,000 of the work. He refused to accept the bonds, as being invalid for the reason hereinabove considered, and the present suit was brought to compel him to accept them.
The said contract, by which the police jury agreed to sell and the defendant agreed to buy, was binding upon neither party, since the defendant remained at liberty not to bid for the work, or, at any rate, to make a bid impossible of acceptance, and the police jury remained at liberty not to accept his bid. At the time, therefore, of the adoption of said curative amendment to article 281, the said bonds had not been already sold, unless the said work had been already adjudicated to defendant — a point upon which the record affords no enlightenment. For the determination of that point, the case will be remanded.
If the accomplishment of the suspensive condition under which said contract was entered into had not been left to the will of the parties, but had been dependent upon some event not within the control of the parties or of either of them, the said contract would have been binding from date, and would have had full effect from that time, for the accomplishment of the suspensive condition retroacts or refers back to the date of the contract. But where the accomplishment of the condition is dependent entirely upon the will of the parties, or of either of them, there is no contract until the condition has been actually accomplished.
The said curative provision of article 281 was evidently intended to .protect the bona fide holders of bonds, or, in other words, those who were already owners of the bonds. The defendant was not in that category if he had not already bid on the said work, or if - his bid had not already been accepted, at the date of the adoption of the amendment.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this ease be remanded, to be proceeded with in accordance with the views hereinabove expressed. The plaintiff *762 to pay costs of the appeal, and. the other costs to abide final judgment.
The CHIEF JUSTICE concurs in the decree.