(82 South. 386)

No. 23503.

SHERIDAN v. POLICE JURY OF WASHINGTON PARISH.

(June 2, 1919.)

*(Syllabus by Editorial Staff.)*

1. HIGHWAYS $\Longleftrightarrow$90 — ROAD DISTRICTS OF WHOLE PARISH — CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under Const. art. 291, as amended (see Act No. 236 of 1912), declaring that police juries "may form their respective parishes into road districts," and notwithstanding Act No. 30 of 1917 (Ex. Sess.) § 2, authorizing police juries to divide parishes "into one or more road districts," the police jury might legally form one road district of the whole parish.

2. COUNTIES $\Longleftrightarrow$178 — ROAD DISTRICT — ISSUANCE OF BONDS—FORM OF SUBMISSION.

An ordinance submitting a proposition to a vote of the property taxpayers was not void, because proposition submitted was to issue bonds of the parish and of the road district, two distinct political corporations, where whole parish had been formed into a district, as Act No. 30 of 1917 (Ex. Sess.) §§ 1, 3, intends that bonds issued for roads and bridges shall be, not merely the obligations of road district, but also obligations of parish within which district is situated; especially where that act makes police jury a governing authority of every road district in parish.

3. COUNTIES $\Longleftrightarrow$183(1) — ROAD DISTRICT FORMED OF ENTIRE PARISH—ISSUANCE OF BONDS—VALIDITY.

An ordinance creating a road district of whole parish incurring a debt and ordering a bond issue was not void because purporting to issue bonds of parish, where proposition stated in ballot and approved by taxpayers was "to incur debt and issue bonds of the Parish of Washington, La., Road District No. 1, etc.," as parish and road district were identical, and bonds were to be obligation of each.

4. EVIDENCE $\Longleftrightarrow$65 — ROAD DISTRICT—ISSUANCE OF BOND—SUBMISSION.

Where taxpayers were informed by ordinance that entire parish had been formed into "road district No. 1" of the parish of Washington," and proposition submitted was "to incur debt and issue bonds of the Parish of Washington, La., Road District No. 1," taxpayers were presumed to know that bonds would, under the law, be the obligation of parish as well as of road district.

5. COUNTIES $\Longleftrightarrow$183(1)—ROAD DISTRICT—ISSUANCE OF BOND—PAYMENT OF PRINCIPAL AND INTEREST.

Under Act No. 256 of 1910, § 27, under which act bonds of a road district were issued, declaring that, after maturity, period of indebtedness should be divided among number of years, so as to make principal and interest to be paid each year as nearly equal and uniform as possible, an ordinance whereby bonds payable during each year increased to the eleventh year, and then decreased, so that the amount paid each year would vary from $15,750 to $47,615, was illegal.

6. COUNTIES $\Longleftrightarrow$183(1)—ROAD DISTRICT—PAYMENT OF BONDS—ILLEGALITY OF ORDINANCE—EFFECT.

Illegality in an ordinance in not fixing number of bonds due each year so as to make total sum of the principal and interest payable each year as nearly "equal and uniform as possible," as required by Act No. 256 of 1910, § 27, would not affect validity of proceedings in other respects, as police jury might correct the error by an appropriate ordinance before issuing the bonds; especially where it was willing to do so.

7. COUNTIES $\Longleftrightarrow$190(2) — IMPROVEMENT OF ROADS—TAXATION — CONSTITUTIONAL PROVISIONS.

The limitation of ten mills of special taxes in any year fixed by Const. art. 281, as amended (see Act No. 197 of 1910), for public improvements, including roads, etc., was not superseded as to taxes levied for roads and bridges by limitation of five mills for five years, as fixed by article 291, as amended (see Act No. 236 of 1912), "for road and bridge purposes," but authority granted by article 291 is addition-

al to that conferred by article 281 to levy other taxes for roads and bridges, not exceeding ten mills, to pay outstanding bonds, representing a debt incurred for that purpose, according to article 281, as amended.

8. CONSTITUTIONAL LAW ⬥⬥8—AUTHORITY OF CONSTITUTIONAL CONVENTION — STATUTE CALLING CONVENTION.

In so far as the delegates in the constitutional convention of 1913 exceeded the limitation put upon their powers by the statute, calling the convention, as by making the radical change in article 291, relating to taxes for roads, etc., the result was invalid.

Monroe, C. J., dissenting.

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Prentiss B. Carter, Judge.

Suit by Daniel E. Sheridan against the Police Jury of Washington Parish. Judgment for defendant, and plaintiff appeals. Affirmed in part, and other error in proceedings by defendant to be remedied by appropriate ordinance.

Ott & Johnson, of Franklinton, for appellant.

J. Vol Brock, Dist. Atty., of Franklinton, and Miller & Burns, of Covington, for appellee.

Lewis R. Graham, of New Orleans (Graham & Martin, of New Orleans, of counsel), amicus curiæ.

O'NIELL, J. Plaintiff appeals from a judgment rejecting his demand to annul the proceedings of the police jury, creating a road district, incurring a debt and issuing bonds, for $500,000, for the construction and maintenance of public roads and bridges.

The complaints, stated broadly, are:

(1) That the ordinance making one road district of the entire parish was null, because (plaintiff contends) the provisions of the constitution and the statutes on the subject contemplate a division of the parish into two or more road districts, or the making of a road district of less area than that of the parish.

(2) That the ordinance submitting the proposition to a vote of the property taxpayers was null, because the proposition submitted was to issue bonds of the parish and of the road district, two distinct political corporations.

(3) That the ordinance incurring the debt and ordering the bond issue is null, because it purports to issue bonds of the parish; whereas, the proposition stated in the ballot voted by the taxpayers was to issue bonds of the road district.

(4) That, by confusing the road district with the parish, in the ordinances complained of, the taxpayers, to whose vote the proposition was submitted, were unable to determine whether the bonds to be issued would be the obligations of the parish or of the road district.

(5) That the ordinance fixing the number of bonds to mature each year is null, because it does not make the sum of the principal and interest to be paid each year as near equal as practicable.

The proceedings relating to the bonds were conducted pursuant to article 281 of the Constitution and the Act No. 256 of 1910. Two propositions, however, were submitted to and approved by the vote of the property taxpayers. The first was to levy a 2-mill tax for 25 years, on all property subject to taxation in the parish, the proceeds of which tax were not to be funded into bonds but were to be used for maintaining and repairing the public roads and bridges of the parish. The second proposition was to incur a debt, and issue negotiable coupon bonds, bearing interest at 5 per cent. per annum payable semiannually, for $500,000, to run for a period of 25 years from their date.

A special tax of 3 mills has been levied for the first year, to pay the bonds maturing at the end of the first year and the interest to be paid that year on all the bonds.

Although plaintiff attacks all of the ordinances relating to the bond issue, it appears that he does not question the legality of the 2-mill tax that was authorized by the vote

of the taxpayers, to be levied for 25 years, the proceeds of which are to be used for maintaining and repairing the public roads and bridges of the parish, but are not to be funded into bonds. We mention that in order that the judgment which we are to render in this case shall not be construed as adjudging the 2-mill tax to be levied for 25 years either valid or invalid. For, if the question of validity of that tax were before us for decision, what we shall say hereafter regarding the 5-mill tax which the police jury might levy for 5 years, under article 291 of the Constitution, would have an important bearing if the tax is sought to be levied under that article; and so would our reference to the decision in Police Jury of Jefferson Parish v. Louisiana Petrolithic Construction Co., 132 La. 755, 61 South. 780, have an important bearing if the tax is sought to be levied under article 281, as amended in 1910.

[1] We find no merit in plaintiff's contention that the police jury could not legally make one road district of the whole parish. Article 291 of the Constitution, as originally adopted, and as amended in 1912, declares that police juries "may form their respective parishes into road districts." It is true, section 2 of the Act No. 30 of the Extra Session of 1917 (p. 45) authorizes the police jury of every parish to "divide" the "parish into one or more road districts." But, as it is not feasible to "divide" a parish into one road district, within the ordinary meaning of the word, and as the statute plainly gives the police jury the right to make either one or more than one road district of the parish, we assume that the Legislature intended to say, what the Constitution declares, that the police juries may "form" their respective parishes into one or more than one road district. That was our ruling to-day in Flanigan v. Police Jury of Jackson Parish, No. 23,496, 82 South. 722.[1]

[2] The complaint that the proposition sub-

<hr/>

[1] Post, p. 613.

mitted to and approved by the vote of the taxpayers was to issue bonds of the parish of Washington is not serious. Section 1 of the Act No. 30 of 1917 (p. 44) declares that the police jury must first establish and publish the geographical limits within which such an election is to be held; which we take to mean that notice must be given that the election is to be held throughout the whole parish, if it is to extend over the whole parish, or notice must be given of the geographical limits of the road district in which the election is to be held, if it be of less area than the whole parish. For the section of the statute referred to concludes by saying:

"That all bonds authorized within such limits as thus established shall be the obligations of the parish, to be paid from taxes levied and collected in accordance with article 281 of the Constitution, on all property within the territorial limits wherein the election is held as fixed by the terms of this section of this act, and all bonds issued and all elections under the conditions of this section [are] to be held conformably to the terms and conditions of article 281 of the Constitution of the state and Act 256 of the Legislature of 1910 as amended; provided that all bonds issued by road or sub-road districts shall be the direct debt and obligations of such districts and issued in their names, through the police juries as their governing authorities."

The idea conveyed by the statute is that bonds issued for construction and maintenance of public roads and bridges shall be, not merely the obligations of the road district (which section 3 of the act declares is a political corporation), but the obligations also of the parish in which the road district is situated; provided, of course, that taxes shall not be imposed upon property outside of the road district for paying bonds issued by and for a road district. The apparent reason for saying that bonds issued by a road district shall be the obligations of the parish, as well as of the road district, is that the police jury is, by the same statute, made the governing authority of every road district in the parish; hence it is to the police jury, as

the governing authority of the road district, that a bondholder must look for the levying of a tax sufficient to pay the bonds of a road district. But, in a case like this, where the road district and the parish are identical in their geographical limits, and as to the property to be taxed for paying the bonds, as well as having the same governing authority, it cannot make any difference, as far as the taxpayers are concerned, whether the bonds be called the bonds of the parish or the bonds of the road district. In fact, according to section 1 of Act No. 30 of 1917, the police jury might have incurred the debt and issued the bonds without having ordained that the parish be formed into a road district.

[3] With regard to the third complaint, that the proposition submitted to the voters was to issue bonds of the road district, the ballot itself (copied in the record) shows that the proposition approved by a majority of the taxpayers was:

"To incur debt and issue bonds of the Parish of Washington, La., Road District No. 1, to the amount of $500,000.00," etc.

In other words, and according to the statute, the bonds were to be the obligations of the parish and of the road district; which, for all purposes relating to the bonds and the debt they represented and the taxes to be levied to pay them, were identical.

[4] Our answer to the fourth complaint is that there was no possibility of a misunderstanding of the proposition submitted to the vote of the taxpayers. They had been informed, by an ordinance duly promulgated, that the entire parish had been formed into "road district No. 1 of the parish of Washington"; and the proposition submitted to them was:

"To incur debt and issue bonds of the Parish of Washington, La., Road District No. 1, to the amount of $500,000.00," etc.

The taxpayers knew, therefore, that those two political corporations, the Parish of Washington and Road District No. 1 of the Parish of Washington, were identical in their geographical limits and as to the property to be taxed, and the taxpayers were presumed to know that the bonds to be issued would be, under the law, the obligations of the parish, as well as of the road district.

[5] The fifth complaint is that the ordinance dated October 4, 1918 (directing the president and secretary of the police jury, for and on behalf of the governing authority, to sign and issue the bonds), does not so fix the number of bonds due each year as to make the total sum of the principal and interest to be paid each year "as near equal and uniform as possible."

Section 27 of Act No. 256 of 1910 (the statute under which these bonds were issued) declares:

"When a period is fixed at which such bonds shall begin to mature, the total amount of indebtedness shall be divided among the number of years in which payments are to be made, and the principal to be paid each year fixed at such amount that when the total annual interest is added thereto the amount to be paid each year shall be as nearly equal and uniform as possible."

It seems that the police jury paid little or no attention to that requirement of the law. Only three bonds (all bonds being in denominations of $1,000) were to mature at the end of the first year from their date. Then the number of bonds to mature each year thereafter increased gradually to the eleventh year, when 33 bonds were to mature. Thence the number to mature each year was diminished, so that only 15 bonds would fall due in each of the last three years. The result is that the amount to be paid each year, under the ordinance, is very far from being as near equal and uniform as possible. To illustrate, the amount to be paid in each of the following years, according to the ordinance, is as follows: First year, only $28,000; second year, $41,850; eleventh year, $47,650; twenty-third year, only $17,250; twenty-fourth year, only $16,500; and twenty-fifth year, only $15,750. There is a difference of

$31,900 between the greatest amount to be paid in one year and the lowest amount to be paid in one year.

[6] We are of the opinion, however, that the illegality in the ordinance fixing the number of bonds to mature each year should not affect the validity of the proceedings in other respects; for the police jury may correct the error, by an appropriate ordinance, before issuing the bonds; and it is suggested in the brief of counsel for appellee that the police jury is willing to make the correction if it be deemed necessary.

It is not only possible, but quite easy, to fix the number of bonds to mature at the end of each of the 25 years so that the total sum of the principal and interest to be paid each year will be very near equal and uniform. The discrepancy of $31,900, complained of, can be reduced to $1,350 without changing the denomination of the bonds. And we do not believe the statute requires that the denomination be less than $1,000. Merely to illustrate how the discrepancy might be reduced as low as $1,350, we suggest this schedule, viz.:

| Year. | Unpaid Bal. | Inter- est. | Princi- pal. | Total. Payt. | Bonds Pd. |
|---|---|---|---|---|---|
| 1st. | $500,000 | $25,000 | $11,000 | $36,000 | 11 |
| 2nd. | 489,000 | 24,450 | 11,000 | 35,900 | 22 |
| 3rd. | 478,000 | 23,900 | 12,000 | 35,900 | 34 |
| 4th. | 466,000 | 23,300 | 12,000 | 35,300 | 46 |
| 5th. | 454,000 | 22,700 | 13,000 | 35,700 | 59 |
| 6th. | 441,000 | 22,050 | 13,000 | 35,050 | 72 |
| 7th. | 428,000 | 21,400 | 14,000 | 35,400 | 86 |
| 8th. | 414,000 | 20,700 | 15,000 | 35,700 | 101 |
| 9th. | 399,000 | 19,950 | 16,000 | 35,950 | 117 |
| 10th. | 383,000 | 19,150 | 16,000 | 35,150 | 133 |
| 11th. | 367,000 | 18,350 | 17,000 | 35,350 | 150 |
| 12th. | 350,000 | 17,500 | 18,000 | 35,500 | 168 |
| 13th. | 332,000 | 16,600 | 19,000 | 35,600 | 187 |
| 14th. | 313,000 | 15,650 | 20,000 | 35,650 | 207 |
| 15th. | 293,000 | 14,650 | 21,000 | 35,650 | 228 |
| 16th. | 272,000 | 13,600 | 22,000 | 35,600 | 250 |
| 17th. | 250,000 | 12,500 | 23,000 | 35,500 | 273 |
| 18th. | 227,000 | 11,350 | 24,000 | 35,350 | 297 |
| 19th. | 203,000 | 10,150 | 25,000 | 35,150 | 322 |
| 20th. | 178,000 | 8,900 | 26,000 | 34,900 | 348 |
| 21st. | 152,000 | 7,600 | 28,000 | 35,600 | 376 |
| 22nd. | 124,000 | 6,200 | 29,000 | 35,200 | 405 |
| 23rd. | 95,000 | 4,750 | 30,000 | 34,750 | 435 |
| 24th. | 65,000 | 3,250 | 32,000 | 35,250 | 467 |
| 25th. | 33,000 | 1,650 | 33,000 | 34,650 | 500 |
| Total | | | $500,000 | | |

The manifest purpose of the law, requiring that the number of bonds to mature each year shall be so arranged that the total amount to be paid each year shall be as near equal and uniform as possible, is to avoid a default in the payment of the bonds due in any year; because the police jury could not, in any emergency, levy special taxes exceeding 10 mills on the dollar of the assessed valuation of the taxable property in the parish, for works of public improvement, including roads and bridges, under article 281 of the Constitution.

[7] Our attention is called to certain expressions in the opinion, lately handed down, in Hayne v. Assessor, 143 La. 712–717, 79 South. 285–287 (and repeated in K. C., S. & G. Ry. Co. v. Skinner, Tax Collector, 81 South. 743, ante, p. 25), to the effect that the limitation of 10 mills of special taxes, in any year, as fixed by article 281 of the Constitution (as amended in 1910) for works of public improvement (including roads and bridges), has been superseded, as to taxes levied for roads and bridges, by the limitation of 5 mills for five years, as fixed by article 291 (as amended in 1912), "for road and bridge purposes." It is suggested, and it is true, that, if that interpretation is correct, the proceedings had in this case are null on their face. For, if the police jury is constrained by article 291 of the Constitution not to levy special taxes exceeding the rate of 5 mills, nor exceeding the period of five years, "for road and bridge purposes," and if therefore the police jury cannot levy (within the 10 mill limit) such special tax each year as will be necessary to pay the interest and principal due in each of the 25 years that the bonds are to run, there will be no means of paying the debt.

Having made a more critical analysis of the constitutional provisions in question, however, we are convinced that the conclusion stated, in that respect, in Hayne v. Assessor, and in K. C., S. & G. Ry. v. Tax Col-

lector (and the obiter dictum to the same effect in Tremont Lumber Co. v. Police Jury, 144 La. 678, 81 South. 250), is not correct and should not be adhered to. The finding in that respect was not the basis of the decision in any of the three cases referred to. The tax in contest in Hayne v. Assessor was found null for this reason: The police jury, proceeding under the provisions of the second sentence of the third paragraph of article 291 of the Constitution (as amended pursuant to the provisions of Act 236 of 1912), levied a 5-mill tax for five years on all of the property in the parish, "for road and bridge purposes," and, on the same day, undertook to levy an additional 5-mill tax for five years on all of the property in a road district within the parish, "for road and bridge purposes." The additional 5-mill tax levied on the property in the road district was contested, and was held invalid, because it doubled the rate of taxation allowed by that provision of the Constitution, on the property within the road district, without regard for the 10-mill limit of special taxes allowed by article 281, for works of public improvement, including roads and bridges. In the Tremont Lumber Company's Case, the tax in contest was held invalid because the election at which the taxpayers voted for levying the tax was not called by the governing authority of the road district in which the election was held. As was stated in the opinion, the question of the rate of taxation was not at issue in the case. As a matter of fact, and as will be pointed out hereafter in this opinion, the taxpayers should not have had a voice in the matter of fixing the rate of the special tax to be levied each year to pay the interest on the bonds and the principal as the bonds would mature. In the K. C., S. & G. Ry. Case the tax was doubled by the overlapping of two road districts.

Article 281 of the Constitution of 1898 originally authorized municipal corporations, parishes and drainage districts, on the vote of a majority in number and amount of the property taxpayers, to incur debt and issue negotiable bonds therefor to the extent of one-tenth of the assessed valuation of the property in the municipality, parish or drainage district, for works of public improvement, including roads and bridges (such bonds not to bear a greater rate of interest than 5 per cent. nor to run longer than 40 years from their date), and to levy and assess special taxes on the property in the municipality, parish, or drainage district, not exceeding 5 mills on the dollar, nor to run longer than the number of years stated in the proposition submitted to the property taxpayers.

Article 281 was amended, in 1910, by including road districts (and navigation districts, several other political corporations having been included by prior amendments), and by increasing the 5-mills limit of taxation to 10 mills, "in excess of all other taxes." And, instead of the authority to levy a special tax for the number of years stated in the proposition submitted to the property taxpayers, there was substituted this direction, or mandate, to the police jury, or other governing authority of the subdivision incurring the debt, viz.:

"And, each year while any bonds issued to evidence said indebtedness are outstanding, the governing authorities of such subdivision shall levy and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually, or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity; provided that such special taxes, for all purposes, shall not, in any year, exceed ten (10) mills on the dollar of the assessed valuation of the property in such subdivision."

Article 291 of the Constitution of 1898 (being the first article under the title "Public Roads"), as originally adopted, authorized the police juries to form their parishes, respectively, into road districts, and, for the

purpose of constructing, maintaining, and repairing the public roads and bridges of the parish, to set aside at least one mill per annum of the taxes levied; to impose a per capita tax of $1 per annum upon every able-bodied male inhabitant between the ages of 18 and 55 years; to levy a graduated vehicle license tax, not less than 25 cents nor more than $1 per annum; and to enact ordinances of a civil nature for enforcing the property and license tax, and of a criminal nature for enforcing the per capita tax. The article concluded by conferring this additional authority upon police juries, viz.:

"Other taxes may be levied by the police juries for road and bridge purposes, not to exceed five mills for five years on the property of the parish, or any ward thereof, where the rate of taxation and the purposes thereof shall have been submitted to the property taxpayers of said ward or parish entitled to vote under the election laws of the state, and a majority in numbers and value of those voting at said election shall have voted in favor thereof."

There is no doubt that the authority conferred upon police juries, by article 291, to levy the special tax "not to exceed five mills for five years, for road and bridge purposes," was in addition to the authority conferred by article 281 (as amended), to levy and collect annually, for each year while any bonds issued to represent an indebtedness incurred for works of public improvement (including roads and bridges) remained outstanding, a special tax "in excess of all other taxes," sufficient to pay the interest on such bonds and the principal falling due each year, and to provide, if necessary, a sinking fund to pay the bonds, provided the tax should not, in any year, exceed 10 mills on the dollar of assessed valuation. For, if there ever was any doubt about that, all doubt was removed by the amendment of article 291, adopted at the November election in 1912, pursuant to the Act No. 236 of that year. In fact, the only apparent purpose of the amendment was to remove any doubt that the au-

thority conferred by article 291 was in addition to the authority conferred by article 281. We quote the amended article 291, putting the new matter in italics, for convenience, viz.:

"Art. 291. The police juries of this state may form their respective parishes into road districts; and in order to raise funds for the purpose of constructing, maintaining and repairing the public roads and bridges of their parishes, they are authorized to set aside at least one mill per annum of the taxes levied by them, and to impose a per capita tax not more than one dollar per annum upon each able-bodied male inhabitant of the parish between the ages of eighteen and fifty-five years, and to levy an annual license of not less than twenty-five (25) cents nor more than one dollar per annum upon each vehicle, including bicycles, kept *within said parishes or within a municipality thereof whether or not exempt in its charter from parochial taxation*, and used for locomotion over public roads, in their respective parishes; which license shall be graduated. The provisions of this article relative to the per capita tax shall not be operative in incorporated towns and cities that maintain their own streets.

"To carry into effect the provisions of this article the police juries may enact such ordinances of a civil nature as may be necessary to enforce the property and license tax, and of a criminal nature to enforce the per capita tax. *Police juries and municipal corporations in the several parishes of this state may levy other taxes for the construction and maintenance of public roads and bridges within the territorial limits of said parishes, and may incur debt, and issue negotiable bonds therefor in the manner and to extend* [a misprint, meaning '*the extent*'] *authorized under provisions of articles 232 and 281 of the Constitution and the statutes adopted to carry them into effect.* Other taxes may be levied by the police juries for road and bridge purposes not to exceed five mills for five years on the property of the parish, or any ward thereof, whether [the word is 'where' in the original article 291] the rate of taxation and the purpose thereof shall have been submitted to the property taxpayers of the said ward or parish entitled to vote under the election laws of the state, and a majority thereof in number and value of those voting at said election shall have voted in favor thereof. *That this article shall be self-operative.*"

Omitting the matter printed in italics, and substituting the word "where" for the mis-

print "whether," would leave the above-quoted article exactly as it was originally enacted. In that form, there might have been some doubt whether the authority to levy a 5-mill tax for five years, conferred by article 291, for road and bridge purposes only, was, as to police juries, in lieu of the 10-mill limit allowed by article 281 for works of public improvement generally. Such a construction, however, would have made an unnecessary conflict between articles 281 and 291, as to the limit of special taxes which police juries might levy for roads and bridges; and it would have ignored the manifest purpose of article 291, i. e., to give additional aid to public highways—not to take away most of the aid that was given in article 281.

But, when we observe the manner in which article 291 was reconstructed by the amendment of 1912, by inserting, ahead of the authority to levy the 5-mill tax for five years, the authority to "levy other taxes for the construction and maintenance of public roads and bridges, * * * and * * * incur debt, and issue negotiable bonds therefor in the manner and to the extent authorized under the provisions of articles 232 and 281 of the Constitution and the statutes adopted to carry them into effect," there is no reason whatever for doubting that the authority granted by article 291, to levy a 5-mill tax for five years "for road and bridge purposes," was in addition to the authority, conferred by article 281, to levy and collect such special taxes (not exceeding 10 mills) as might be necessary to meet the interest and principal falling due each year on any outstanding bonds issued for works of public improvement.

It will not do to say that the expression in the amendment of article 291, "in the manner and to the extent authorized under the provisions of articles 232 and 281 of the Constitution and the statutes adopted to carry them into effect," refers only to the extent

to which debts may be contracted and bonds issued, and not to the extent to which taxes may be levied, "for the construction and maintenance of public roads and bridges." For that interpretation would leave no limit whatever on the extent to which taxes might be levied "for the construction and maintenance of public roads and bridges," or, what is worse, it would limit the tax to 5 mills for five years, to pay the interest and principal on bonds that might be issued to the amount of 10 per cent. (100 mills on the dollar) of the assessed valuation, running 40 years. We must bear in mind, too, that the proviso in article 232, allowing special taxes for works of public improvement, does not mention bonds at all. It was inserted merely to avoid any conflict between the first part of the article (limiting the general tax to 10 mills "for all purposes whatsoever") and article 281, permitting the levy of special taxes for works of public improvement. Article 232, therefore, does not limit the rate of special taxes for works of public improvement. And, as the article does not relate to bonds at all, there would have been no reason whatever for referring to that article (as well as 281), in the amendment of article 291, if the intention had been to define only "the manner and extent" to which a debt might be contracted and bonds issued, but not the "manner and extent" of levying special taxes.

Yet it appears, as was pointed out in the case of Hayne v. Assessor, that the members of the constitutional convention of 1913 thought there was a conflict between the first and second sentence in the third paragraph of the amended article 291. Hence they struck out the second or last sentence, not the new matter that had been inserted by the amendment of 1912, but the original matter that had appeared in the Constitution of 1898, giving authority to levy the 5-mill tax for five years. By that process, the entire last paragraph of article 291, as originally

enacted, was wiped out, and police juries were told to proceed under article 281, for the incurring of debt, issuing of bonds and levying of special taxes, for public roads and bridges. If that had been the purpose of amending article 291, in the November election of 1912, it would have been an idle ceremony and a needless expense to the taxpayers; for surely the police jurors and taxpayers throughout the state were aware that they might avail themselves of the provisions of article 281, which was also amended and re-enacted again at that same November election. See Act No. 132 of 1912, p. 164.

[8] A majority of the members of this court, however, are of the opinion that, in so far as the delegates in the constitutional convention of 1913 exceeded the limitation put upon their powers by the statute calling the convention, the result is invalid. The radical change attempted to be made in article 291 was in excess of the limitation put upon the authority of the delegates in the convention, and it is therefore of no effect. See Hayne v. Assessor, 143 La. 714, 79 South. 286, citing State v. American Sugar Refining Co., 137 La. 407, 68 South. 742, and Foley v. Democratic Committee, 138 La. 220, 70 South. 104. Article 291 of the Constitution of 1898, therefore, stands unaffected by the Constitution of 1913. And our conclusion is that the authority it confers upon police juries to levy a 5-mill tax for five years, "for road and bridge purposes," is in addition to the authority to "levy other taxes for the construction and maintenance of public roads and bridges," not exceeding 10 mills, to pay outstanding bonds representing a debt incurred for such purpose, according to the provisions of article 281 of the Constitution of 1898, as amended in

1910. What was said to the contrary in Hayne v. Assessor cannot be reconciled with the interpretation given to article 281 in the case of Police Jury of Jefferson Parish v. Louisiana Petrolithic Construction Co., 132 La. 758, 61 South. 780. The ruling there was that article 281, as amended in 1910, not only permitted but commanded the police jury to levy, each year while any road bonds were outstanding, a special tax, not exceeding 10 mills but sufficient to pay the interest and principal falling due each year. Hence it was held that, by including in the proposition submitted to the vote of the taxpayers, and by their approval of, a proposition to levy a 5-mill tax, the whole proceeding was annulled, because the constitutional limit of taxation for such purpose was not 5 but 10 mills, under article 281, as amended in 1910.

Our conclusion is that the proceedings complained of are valid, except the section of the ordinance of October 4, 1918, fixing the number of bonds to mature each year. The error in that respect can and must be remedied by an appropriate ordinance before the bonds shall be issued.

The judgment appealed from is affirmed in so far as it recognizes the validity of the bond issue and of all proceedings had in relation thereto, except that the police jury shall, by appropriate ordinance, before delivering the bonds, rearrange the maturity periods so that the total sum of the principal and interest to be paid in each of the 25 years shall be as near equal and uniform as possible. The defendant is to pay all costs of this suit.

MONROE, C. J., dissents, adhering to the views expressed in Hayne v. Assessor, 143 La. 697, 79 South. 280.