ODOM, J.
 

 Plaintiff is a judgment creditor of the defendant, a drainage district organized under Act No. 317 of 1910. The judgment was rendered on November 4, 1918, and amounts to $5,379.34, with interest from May 24, 1917. The present suit is a mandamus proceeding to compel the drainage district, through its board of commissioners, to pay the judgment.
 

 The defense is that the drainage district has no funds with which to pay the judgment, and that its governing authoritie’s are not vested with authority, either statutory or constitutional, to levy taxes to pay a debt of this hind, and it is therefore powerless to meet plaintiff’s demands.
 

 There was judgment in favor of plaintiff, and defendant appealed.
 

 1. The drainage district was organized under the provisions of Act No. 317 of 1910, p. 542, section 9 of which reads in part as follows:
 

 “That in order to carry out the’provisions of this Act relative to the drainage of lands situated in said drainage or subdrainage districts as herein provided, the Commissioners appointed or selected as aforesaid shall have the power to provide the funds necessary therefor
 
 by levying any tace or forces contribution which is now or may hereafter be authorized by the Constitution and laws of this State.”
 

 In order to raise funds with which to carry out the purposes for which the drainage district was organized, it proceeded under the provisions of the Act No. 256 of 1910, p. 426, to hold an election on August 1,1911, at which election there was submitted to the taxpaying voters of the district the following major proposition, to wit:
 

 “To levy, assess and collect annually a special tax of five (5) mills on the dollar of the assessed valuation of all the property situated within the limits of the New River Drainage District of the Parish of Ascension for a period of forty (40) years, for the following-purposes, to wit:
 

 “(a) For the payment in principal and interest of a series of bonds of $70,000.00, voted at the same election.
 

 “(b) Of paying the expenses of the organization and the running and operating expenses of the, said Board of Commissioners of the New River Drainage District of the Parish of Ascension.
 

 “(c) Of operating drainage canals, ditches, machinery owned and operated or controlled by said Drainage District.’
 

 “(d) To open, enlarge, cut and extend such canals and streams situated within the limits of the said Drainage District, and such other-works of drainage as in the judgment of said Board of Commissioners of the said Drainage District may deem necessary and proper eco
 
 *305
 
 nomically to drain the property included' within the limits thereof.
 

 “(e) Of specially pledging said five (5) mill tax to the redemption of said indebtedness in principal and interest of said series of bonds, amounting to the said sum of $70,000.-0Ó.”
 

 The proposition to levy the tax of 5 mills for the purposes stated was approved by the taxpayers, bonds in the sum of $70,000 were issued, negotiated, and are now outstanding, and the board of commissioners levies annually a tax on the property within the district sufficient to pay the bonds as they mature together with interest thereon. But the tax necessary for this purpose is less than the 5-mill limit authorized by the taxpayers. Therefore the board of commissioners has never levied the full 5 mills.
 

 Plaintiff’s contention is that, inasmuch as the district is indebted to it, the full five-mill tax should be levied annually so as to create a surplus out of which it may be paid. The board of commissioners refuses to do this, its contention being that under no law, constitutional or statutory, has it authority or power to levy any tax in excess of that necessary to pay the bonded indebtedness of the district, without first submitting the proposition of levying the tax to the taxpayers for their approval.
 

 This is unquestionably true, and we so held in the case of State ex rel. Ascension Red Cypress Co. v. New River Drainage District, 148 La. 603, 87 So. 310, where this plaintiff was before the court asking that defendant be compelled to make provision for the payment of its judgment.
 

 But in this case the taxpayers have already authorized the tax which plaintiff now asks that the board of commissioners be compelled to levy. The tax was authorized at the election held on August 1, 1911. The major proposition then submitted was to levy, assess, and collect a special tax of 5 mills for a period of forty years. The purpose for which the drainage district was organized was to properly drain the property included within its. limits and the purpose of the tax which the taxpayers authorized at that election was to-accomplish the end in view.
 

 The board of commissioners contemplated the issuance of bonds in the sum of $70,000, and one of the purposés of the tax was: “(a) Eor the payment in principal and interest of a series of bonds of $70,000, voted at the same election.” But that was not the only purpose of the tax. This manifestly appears from the whole proposition submitted. One of the purposes of the tax was: “(b) Of paying the expenses of the organization and the running and operating expenses of the organization and the running and operating expenses of the Board.” Another was: “(c) Of operating drainage canals, ditches, machinery owned and operated or controlled by said Drainage District”; and still another was: “(d) To open, enlarge, cut, and extend such canals and streams, situated within the limits of said Drainage District, and such other works of drainage as in the judgment of the Board of Commissioners of the said Drainage District may deem necessary and proper economically to drain the property included within the limits thereof.”
 

 Another purpose of the election was to authorize the board to pledge the said 5-mili
 
 *307
 
 tax “to the redemption of said indebtedness (meaning the bonded indebtedness) in principal and interest of said series of bonds amounting to the sum of $70,000.”
 

 It is very clear that the 5-mill tax was not voted for the sole purpose of paying the bonds and interest as they mature. That was one of the purposes, and under the law and the authority delegated by the taxpayers it is the paramount, mandatory duty of the board of
 
 commissioners to see
 
 that the bonds are paid.
 

 Article 281 of the Constitution of 1898, as amended in 1910 (see Act No. 197 of 1910, p. 332, also section 14 (a), art. 14 of the Constitution of 1921), which was in force at the time this election was held and these bonds issued, provides: “Each year while any bonds issued to evidence said indebtedness are outstanding, the governing authorities of such subdivision shall levy and collect annually, in excess of all other taxes,
 
 a tax su'ffloient to pay the interest,
 
 annually or semi-annually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity.”
 

 Among the other propositions submitted to the taxpayers at the election held on August 1, 1911, was one asking for authority to pledge the said 5-mill tax to the redemption of said bonds. This authority was granted, and pursuant thereto the board of commissioners in the ordinance providing for the issuance of the bonds stipulated that said special tax was “irrevocably pledged” for their payment. The bondholders may therefore demand that the tax be levied, assessed, and collected each year, and that the entire proceeds thereof, if necessary, be first applied fo the payment of the bonds and interest. But the bondholders have no interest in or pledge on. tho 5-mill tax beyond the amount thereof which is necessary for their payment. If the drainage district had no obligations except the bonds, its policy of levying each year only such millage as is necessary to pay them would meet all the requirements of the law. In fact, the levy of an additional amount would not be permissible, because such corporations have no warrant to collect by way of taxation any greater amount than is necessary for their needs and thereby build up an unnecessary surplus. But, when they have legitimate obligations incurred in constructing or operating the drainage system aside from
 
 their
 
 outstanding bonded indebtedness, they may levy, assess, and collect each year such amount of taxes as may be necessary to meet them, provided, of course, that the millage assessed is within the limit authorized by the taxpayers, which in this case was 5 mills.
 

 We quote with approval the following from the very able opinion written by the trial judge:
 

 “The defendant’s position is, that it only has power and authority to levy and assess
 
 such a tax
 
 (not to
 
 exceed,
 
 five mills), as is actually necessary to ‘purpose (e)’, viz: To redeem the ‘principal and interest of said serial bonds.’ That the election did not authorize the Commission beyond that, in levying and assessing the ‘voted’ tax; and that, therefore, the plaintiff is without right of cause* of action.
 

 “The Court is of the opinion that the five mill tax was voted for five specific purposes, viz: the five several purposes severally desig
 
 *309
 
 nated under the headings, (a), (b), (c), (d), and (e).
 

 “It seems,clear that it was intended that the Board should be authorized to pursue and accomplish
 
 each of these several purposes;
 
 and that it was the intent to provide it'with the proposed five mills special tax in order that it should be able to secure funds with which to meet
 
 such obligations
 
 as they might properly and legally incur in
 
 accomplishing the five
 
 several ‘designated’ purposes. * * *
 

 “It would appear that if the entire five mills were necessary 'to care for the redemption of the bonds, principal and interest, each year, the holders of such obligations as plaintiff’s would not be able to demand any part thereof, because of the ‘special pledge’ in favor of the bonds and interest. However, if any portion of such proceeds
 
 escapes
 
 from the effect and operation of the ‘special pledge’, (as would be the case if the tax yields more than sufficient funds to retire the maturing bonds, principal and interest, each year), it should be immediately available for the satisfaction of the remaining authorized obligations of the Board.”
 

 Article 281 of the Constitution of 1S98, as amended in 1910, provides that certain political corporations, including drainage districts, may incur debt and evidence the same by negotiable bonds and makes it mandatory upon the governing authorities thereof to levy, assess, and collect each year “a tax sufficient to pay” them. But it does not prohibit such' authorities from levying additional ad valorem taxes for drainage purposes, nor is it the only authority for levying such taxes. The act proposing the amendment in 1910»to which wo have referred was No. 197. Act No. 317 of the same session authorized the creation of drainage districts and by section 9 thereof it is provided that the board of commissioners thereof “shall have the power to provide the funds necessary therefor by levying
 
 amy taa>
 
 or forced contribution which is now or may hereafter be authorized
 
 by the Constitution and laws of this State.”
 
 (Italics ours.)
 

 At the same session, Act No. 256 was adopted which provides in section 2 that the governing authorities of any subdivision of the state, drainage districts included, “shall have authority to call a special election for the purpose of submitting to the property taxpayers * * * a proposition to levy a special tax not to exceed the limit that is now or may hereafter be fixed by the Constitution of Louisiana for the purpose of giving additional aid to public schools
 
 constructing or purchasing awy work of public improvement in keeping with the objects and purposes for ^ohich the subdivision was created,
 
 and the title to which shall vest in the public or in the subdivision in which the tax is levied.” (Italics ours.)
 

 In the same section it is provided that “at the same election * * * a proposition may be submitted to the property tax payers as to whether or not they will incur debt and issue negotiable bonds fherefor.”
 

 Therefore, when this drainage district held its election on August 1, 1911, it had authority
 
 under the law,
 
 Act No. 256 of 1910, to levy a tax not exceeding the limit fixed by the Constitution, for any work of public improvement “in keeping with the objects and purposes for which the subdivision was created.”
 

 It is clear that the taxpayers were given authority to vote the special ad valorem tax
 
 *311
 
 without reference to a bond issue, for it is provided that “at the same election * * * a proposition may be submitted * * * as to whether or not they will incur debt and issue negotiable bonds.” The two propositions are entirely separate.
 

 At the. election held by this drainage district, Both propositions were submitted and both carried. The drainage district was authorized by the taxpayers to levy a 5-mill tax to construct any work in keeping with the objects and purposes for which it was organized, and under that authority it may now levy the full amount of the tax in order to meet the legitimate obligations which it incurred in carrying out its purposes.
 

 The whole contention of counsel for the drainage district is that article 281 of the Constitution of 1898 makes no provision for the levying of any ad valorem tax by the governing authorities of the subdivisions of the state therein mentioned in excess of an amount necessary to pay their bonded indebtedness. That article is purely a bonding ordinance, its purpose being to authorize the issuance of bonds and to make them stable by compelling the governing- authorities to levy, assess, and collect each yéar a tax sufficient to pay them. It makes no provision for the levying of any other or" additional ad valorem taxes. But, as we have already pointed out, it does not prohibit the levying of additional ad valorem taxes for such purposes, nor is such prohibition found elsewhere in the Constitution, and the Constitution permits any legislation which it does not expressly forbid.
 

 If that article of the Constitution were the only authority for levying ad valorem taxes for drainage purposes, counsel’s position would be well founded. But that is not the only authority, for Act No. 256 of 1910 expressly provides in section 2 that taxes not exceeding the “limit that is now or may hereafter be fixed by the Constitution” (which limit was 10 mills under article 281 of the Constitution of 1898, as amended in 1910) may be levied for any “works of public improvement in keeping with the objects and purposes for which the subdivision was created.”
 

 2. The debt which plaintiff now asks that defendant be compelled to pay was incurred in connection with the construction of a drainage canal. Plaintiff donated the right of way over its land for the canal with the stipulation that defendant should pay for the timber destroyed, whicli stipulation was acceded to by defendant. This being a debt incurred by the drainage district in the construction of the work undertaken, it must be paid, if the district has the means for doing so.
 

 It is alleged, and defendant concedes, that, if the full five-mill tax is levied and collected each year, the proceeds will be more than sufficient to pay the bonds as they mature and the interest. There would be a surplus left out of which plaintiff claims it should be paid.
 

 ■ As defendant has been ordered by a judgment now final to pay plaintiff’s debt, and as the taxpayers have provided the means by which the debt may be paid, it follows that defendant must do so.
 

 The trial judge so held, and ordered the governing authorities of the district to levy, assess, and collect the full 5-mill tax, and to apply so much of the proceeds thereof each year as are not necessary for the payment of the bonds and interest to the payment of plaintiff’s judgment, and to continue to levy, as
 
 *313
 
 sess, and collect said tax and to so apply the proceeds, until plaintiff’s judgment is paid in full with all costs of court. This judgment is correct, and we approve it.
 

 3. Counsel for defendant call our attention to the case reported in 148 La. 603, 87 So. 310. There this plaintiff was before the court seeking the same relief which it here seeks. The plaintiff’s demands were there rejected, and it is contended that it was there held that the drainage district could not do what plaintiff now asks that it be compelled to do. Hence “res adjudicata” is pleaded.
 

 The holding in that case is not in conflict with our holding in the present case. Counsel for defendant, in his brief, points out the distinction. He says: “At that time it was not argued to this court by plaintiff that the drainage district had the right to pay the judgment out of the proceeds of that táDc (meaning the tax authorized by the election held on August 1, 1911), but the argument was advanced that because the obligation had been created and the money judgment had been rendered, the court had the power to order the levying of an additional tax to pay this judgment. This court held that not only did the drainage board not have the power to levy the tax without first submitting the proposition to a vote of the tax payers of the District but also held that the drainage board could not be mandamused to pay this judgment, because of its defense that it had no funds with which to do so.”
 

 In the first suit, it was not pointed out that the 5-mill tax already voted, if levied in full, would yield proceeds sufficient to pay the bonds as well as plaintiff’s debts. The proposition there urged was that the board had authority to levy “additional taxes” without submission of the proposition to the taxpayers. We held that such could not be done.
 

 In the present suit, the contention is that the board has authority to and should levy and collect the full 5-mill tax already authorized, and apply the avails thereof in excess of the amount necessary to pay the bonds and interest to the payment of plaintiff’s judgment. We hold that it may and should do so.
 

 4. We have not referred to or considered those constitutional or legislative provisions relative to such taxes adopted since this tax was levied in 1911, because only the laws then in force are pertinent to issues here involved. But counsel for defendant refer us to the case of St. Charles Municipal Drainage District v. Cousin, 130 La. 331, 57 So. 992, 994, decided in 1912, involving bonds issued under the same constitutional and statutory provisions as the ones here, which case, it is argued, supports their position.
 

 That was a suit to compel one Cousin to accept certain bonds of the drainage district which he had agreed to purchase. The court held with defendant, because it found that the governing authorities of the district had “not only disregarded, but directly contravened, the law, constitutional and statutory, upon which it now relies, in another particular, to wit: The Constitution, as amended, provides that: ‘Said board * * * shall levy,
 
 tmnually,
 
 upon said land, forced contributions,’ ” and section 21 of Act No. 317 of 1910, which also provides that the tax shall be levied annually. The board had levied a forced contribution or acreage tax of $2 per acre on the land within the district for a period of 40 years to secure the payment of the bonds.
 
 *315
 
 The court held that under the law the tax should have been, levied annually for an amount sufficient to pay the bonds. That case is not in point here.
 

 Another case cited by defendant is Police Jury v. Louisiana Petrolithic Construction Co., 132 La. 755, 61 So. 780, decided in 1913. The validity of road district bonds was there involved. The tax limit was fixed at 5 mills. This was held to be “fatal to the validity of the bonds,” because the law both constitutional and statutory required the governing authorities to levy each year “a sufficient tax” to pay the bonds not exceeding the constitutional limit, which was 10 mills. This case does not hold that such authorities may not use the avails of an ad valorem tax authorized by the taxpayers for necessary purposes other than for paying the bonds.
 

 The case of Kansas City Southern Ry. Co. v. Hendricks et al., 150 La. 134, 90 So. 545, is also cited.
 

 A reading of that case will disclose that it has no bearing upon the issue here involved. The same may be said of Sheridan v. Police Jury, 145 La. 403, 82 So. 386.
 

 Eor the reasons assigned, the judgment appealed from is affirmed, with all costs.